**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2023 MSPB 16**

Docket No. PH-0714-19-0128-I-1

**Mikhail Semenov,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

April 25, 2023

Mikhail Semenov, Newton, Massachusetts, pro se.

Paul V. Usera, Bedford, Massachusetts, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## OPINION AND ORDER

¶1       The appellant has filed a petition for review of the initial decision, which sustained his performance-based removal under the authority of the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (VA Accountability Act), Pub. L. No. 115-41, § 202(a), 131 Stat. 862, 869-73 (codified at 38 U.S.C. § 714).  For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the regional office for further adjudication consistent with this Opinion and Order.  On remand, the administrative judge should:  (1) apply the substantive elements for a performance-based charge under chapter 75; (2) provide the parties with an

opportunity to present evidence and argument regarding whether the agency's error in reviewing the proposed removal for substantial evidence was harmful; (3) consider the appellant's claims of harmful procedural error regarding the validity of his performance standards and rating, as well as the authority of the proposing official; (4) address the appellant's claim that the agency violated statutory provisions executing certain merit system principles; (5) reassess the appellant's claim of national origin discrimination consistent with *Pridgen v. Office of Management and Budget*, 2022 MSPB 31; (6) address the appellant's due process claim raised for the first time on review; (7) address the appellant's additional disclosures and activities in analyzing his whistleblower reprisal claim; and (8) review the agency's penalty selection by considering the *Douglas* factors.

## BACKGROUND

¶2      The appellant was a GS-13 Research Health Scientist at the Bedford, Massachusetts campus of the New England Geriatric Research Education and Clinical Center (GRECC), which was located in the Edith Nourse Rogers Memorial Veterans Hospital (Bedford VA). Initial Appeal File (IAF), Tab 9 at 9, 76. According to his position description, the appellant's duties included overseeing research into certain aspects of neurodegenerative diseases such as Alzheimer's disease. *Id.* at 86. He also was expected to "[p]eriodically . . . communicate the results of new studies by writing and publishing original scientific papers." *Id.*

¶3      The appellant's performance was rated on a fiscal year (FY) basis. IAF, Tab 12 at 22. His performance standards for FY 2017, which ran from October 1, 2016, to September 30, 2017, included the critical element of research. *Id.* One of the two goals under that element was publishing three or more peer-reviewed scientific papers. *Id.* The GRECC Director issued the appellant a letter of proposed reprimand on June 6, 2017. IAF, Tab 9 at 91-92. Among the concerns he expressed in the proposed reprimand was the appellant's failure to demonstrate

that he had made progress on his publishing goal. *Id.* at 91. However, the first line of the letter erroneously stated that the proposed action was to "admonish" rather than "reprimand" the appellant. *Id.* The Director therefore rescinded the June 6 letter. IAF, Tab 24 at 49, Tab 31, Hearing Compact Disc 1 (HCD 1) (testimony of a Bedford VA Human Resources (HR) Specialist). He issued a new proposed letter of reprimand on June 23, 2017, which correctly identified the nature of the proposed action. IAF, Tab 20 at 79-80; HCD 1 (testimony of the HR Specialist). The substance of the letter otherwise remained unchanged. *Compare* IAF, Tab 20 at 79-80, *with* IAF, Tab 9 at 91-92; HCD 1 (testimony of the HR Specialist). After the appellant failed to respond to the June 23, 2017 proposed reprimand, the GRECC Director issued a decision reprimanding the appellant. IAF, Tab 9 at 94. At the end of FY 2017, the GRECC Director rated the appellant's performance on his research goal as Unacceptable, resulting in an overall Unacceptable rating.[1] IAF, Tab 12 at 25-26.

¶4　　The FY 2018 performance year ran from October 1, 2017, to September 30, 2018. IAF, Tab 9 at 69. The Director provided the appellant his FY 2018 performance standards in November 2017, reflecting the goal that, as relevant here, the appellant publish five peer-reviewed scientific papers during FY 2018. *Id.* On November 27, 2017, the appellant sent an email to the Director in which he objected to the increased publishing goal. IAF, Tab 20 at 82-84. The Director responded, declining to change the goal. *Id.* at 84. He wrote, in pertinent part, "I am the Director . . . and do set the standards for the productivity so there is no need for your assistance." *Id.* However, a short time later, he sent an email to the appellant and another research scientist (Employee A) stating that he was

---

[1] The performance of Bedford VA Research Health Scientists on any particular element is rated as Exceptional, Fully Successful, or Unacceptable. IAF, Tab 9 at 112, Tab 12 at 25. An Unacceptable rating on a critical element results in a summary rating of Unacceptable. IAF, Tab 9 at 113, Tab 12 at 26.

considering lowering the expectation to four published peer-reviewed papers. IAF, Tab 12 at 29, Tab 20 at 81.

¶5    The Director sent the appellant an email on November 28, 2017, that purportedly included a copy of the revised standards as an attachment; however, the version of the performance standards attached to the email did not reflect that the standards had been revised. IAF, Tab 9 at 67, 69. The appellant received a copy of his revised standards on December 12, 2017. *Id.* at 109. These standards reflected the lowered goal of publishing four peer-reviewed scientific papers.[2] *Id.* In October 2018, the Director rated the appellant's performance on his research critical element for FY 2018, which included his publishing goal, as Unacceptable, and therefore rated his overall performance as Unacceptable. IAF, Tab 20 at 564-65. The record contains a copy of the appellant's appraisal reflecting that another individual signed off on this rating as the "approval official" in November 2018. *Id.* at 565.

¶6    On December 11, 2018, the GRECC Director issued a notice proposing to remove the appellant pursuant to 38 U.S.C. § 714 for failing to achieve fully successful performance in his research critical element. IAF, Tab 9 at 76-78. In support of the charge, the Director alleged that the appellant did not publish a minimum of four peer-reviewed scientific papers, as required by his FY 2018 performance standards. IAF, Tab 9 at 76, Tab 20 at 561.

¶7    The appellant responded orally and in writing to the Bedford VA Director, who was the deciding official. IAF, Tab 9 at 11, 18-74. In both responses, and in a subsequent email to the deciding official, he alleged various improprieties in the issuance of his FY 2017 and FY 2018 performance standards and appraisals. IAF, Tab 9 at 20, Tab 22 at 101-05. These improprieties included an allegation

---

[2] Both the draft goals and the final version required the appellant and Employee A to be the "first or senior author" on all but one of the published papers. IAF, Tab 9 at 67, 69, 109, Tab 12 at 29, Tab 20 at 81.

that the proposing official altered the appellant's FY 2018 performance standards after digitally signing them to make it appear that he timely presented those standards to the appellant. IAF, Tab 22 at 104. The appellant also advised the deciding official that he "had notified" the agency's Office of the Inspector General (OIG) concerning the alleged improprieties. *Id.* at 102. On January 3, 2019, the deciding official issued a decision finding that the charge was "supported by substantial evidence" and that removal was warranted. IAF, Tab 9 at 11-13. The appellant was removed effective January 4, 2019. *Id.* at 9.

¶8 The appellant filed a Board appeal challenging his removal and requested a hearing. IAF, Tab 1 at 2-3. He raised an affirmative defense of discrimination based on his Eastern European national origin. IAF, Tab 26 at 6-8, Tab 30 at 24-25. He further alleged reprisal for his disclosures to the deciding official and OIG regarding the FY 2017 and FY 2018 performance processes. IAF, Tab 26 at 4-6, Tab 30 at 73-77.

¶9 Following a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 38, Initial Decision (ID) at 2, 28. He found that the agency proved its charge by substantial evidence, ID at 17-19, and that the appellant failed to prove his affirmative defenses, ID at 20-27. The administrative judge held that he was required to affirm the removal penalty under 38 U.S.C. § 714(d)(2)(B) because the agency had proven its charge by substantial evidence. ID at 27-28.

¶10 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3, 4.

ANALYSIS

We remand this appeal for the administrative judge to apply the substantive elements for a performance-based charge under chapter 75.

¶11 In analyzing whether the agency proved its charge, the administrative judge stated that, to establish that the appellant's performance was unacceptable, the

agency was required to prove by substantial evidence not only that the appellant failed to meet the publishing requirement, but also that the performance standard at issue was "reasonable, realistic, [and] attainable." ID at 18 (quoting *Thomas v. Department of Defense*, 95 M.S.P.R. 123, ¶ 12 (2003), *aff'd per curiam*, 117 F. App'x 722 (Fed. Cir. 2004)). That requirement derives from the Board's precedent under 5 U.S.C. chapter 43. *See Thomas*, 95 M.S.P.R. 123, ¶ 6. For the reasons set forth below, we find that the elements for proving a performance-based charge under chapter 43 do not apply to performance-based actions under the VA Accountability Act, and that the proper elements for such cases derive from the Board's application of 5 U.S.C. chapter 75.

¶12     Federal agencies generally may rely on one of two statutory procedures in removing a tenured employee, 5 U.S.C. chapter 75, which covers both misconduct- and performance-based actions, or chapter 43, which covers only actions based on unacceptable performance. *Brenner v. Department of Veterans Affairs*, 990 F.3d 1313, 1316 (Fed. Cir. 2021) (citing *Harris v. Securities and Exchange Commission*, 972 F.3d 1307, 1315 (Fed. Cir. 2020); *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1378-79 (Fed. Cir. 2020)). For matters that involve employee behavior occurring after the June 23, 2017 enactment of the VA Accountability Act, the Act provides the Department of Veterans Affairs with a third option when issuing a removal based on either performance or misconduct. 38 U.S.C. § 714; *Brenner*, 990 F.3d at 1316-18, 1327-28; *see* Pub. L. No. 115-41, 131 Stat. at 882 (reflecting the June 23, 2017 enactment date for the VA Accountability Act).

¶13     Chapter 75 authorizes adverse actions such as removals "only for such cause as will promote the efficiency of the service." 5 U.S.C. §§ 7512, 7513(a); *Brenner*, 990 F.3d at 1316. An agency is not required to follow chapter 43 procedures before taking a performance-based action under chapter 75. *Lovshin v. Department of the Navy*, 767 F.2d 826, 844 (Fed. Cir. 1985) (en banc). The procedural requirements for an action under chapter 75 begin with the agency's

notice to the employee that it is proposing disciplinary action. 5 U.S.C. § 7513(b). In reviewing an action under chapter 75, the Board reviews the agency's penalty determination and has the authority to mitigate to a lesser penalty. *Brenner*, 990 F.3d at 1316-17; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981).

¶14    Chapter 43 governs "the evaluation of a [F]ederal employee's work performance." *Lovshin*, 767 F.2d at 830 (emphasis omitted). It authorizes the reduction in grade or removal of an employee who has "fail[ed] to meet established performance standards in one or more critical elements of such employee's position." 5 U.S.C. §§ 4301(3), 4303(a). However, before taking an action under chapter 43, an agency must follow a series of procedural steps. Specifically, in order to properly remove or demote an employee under chapter 43, the agency must have (1) established a performance appraisal system approved by the Office of Personnel Management, (2) communicated the performance standards and critical elements of an employee's position to him at the beginning of the appraisal period, (3) warned him of inadequacies in critical elements during the appraisal period, and (4) counseled and afforded him an opportunity to improve after proper notice. *Lovshin*, 767 F.2d at 833-34 & n.6. "Because of these procedural requirements and safeguards, [c]hapter 43 gives the agency 'great[er] flexibility' in its adverse action than [c]hapter 75." *Brenner*, 990 F.3d at 1317 (quoting *Lovshin*, 767 F.2d at 842 ("Agencies have been given great flexibility in the structure of appraisal systems . . . in order to be able to experiment and develop a system or systems that meet their particular needs.")). Specifically, an agency need not establish a nexus between the poor performance and the efficiency of the service, and the Board is not authorized to mitigate the agency's penalty. *Id.* at 1317. Additionally, actions under chapter 43 must be supported by substantial evidence to be sustained by the Board, whereas

chapter 75 actions are subject to the higher preponderance of the evidence standard. 5 U.S.C. § 7701(c)(1); *Sayers*, 954 F.3d at 1378.[3] Thus, to prove its case under chapter 43, an agency must show by substantial evidence that: (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant "continue[d] to have unacceptable performance" in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. 5 U.S.C. § 4302(c); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). Additionally, an agency must prove by substantial evidence that the appellant's performance was unacceptable before the agency provided him with notice of his performance inadequacies and an opportunity to demonstrate acceptable performance. *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61, 1363 (Fed. Cir. 2021) (interpreting 5 U.S.C. § 4302(c)(6)).

¶15      As indicated above, the VA Accountability Act provides the agency with an alternative procedure for taking disciplinary actions. *Sayers*, 954 F.3d at 1374 (citations omitted). The Act provides expedited procedures under which the Secretary of the Department of Veterans Affairs ("the Secretary") "may remove, demote, or suspend" a covered agency employee "if the Secretary determines the

---

[3] Substantial evidence is "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p). Preponderance of the evidence is "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q).

performance or misconduct of the covered individual warrants such removal, demotion, or suspension." 38 U.S.C. § 714(a)(1), (c)(1)-(2); *Brenner*, 990 F.3d at 1317-18. Chapter 43 procedures do not apply to performance-based actions taken under the Act. 5 U.S.C. § 4303(f)(4); 38 U.S.C. § 714(c)(3). On appeal from a decision under the Act, the administrative judge and the Board "shall uphold the decision of the Secretary . . . if the decision is supported by substantial evidence." 38 U.S.C. § 714(d)(2)(A), (3)(B). "[I]f the decision of the Secretary is supported by substantial evidence, the administrative judge [and the Board] shall not mitigate the penalty prescribed by the Secretary."[4] 38 U.S.C. § 714(d)(2)(B), (3)(C).

¶16    The question before us here is what substantive standard the Board should apply to performance-based actions under the Act. The interpretation of a statute begins with the language of the statute itself. *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 13 (2016). If the language provides a clear answer, the inquiry ends and the plain meaning of the statute is regarded as conclusive absent a clearly expressed legislative intent to the contrary. *Id.* The language of 38 U.S.C. § 714 plainly precludes the Board from applying the elements of chapter 43 to an action under the VA Accountability Act. In describing the procedures for taking an action under 38 U.S.C. § 714, the statute provides that "[t]he procedures under chapter 43 of title 5 shall not apply to a removal, demotion, or suspension under this section." 38 U.S.C. § 714(c)(3). The substantive standard for actions under chapter 43 is derived from the procedural requirements under that chapter. *See Mahaffey v. Department of Agriculture*, 105 M.S.P.R. 347, ¶ 7 (2007) (setting forth the elements for a chapter 43 performance-based action by citing the portion of *Lovshin*, 767 F.2d at 834 that explains chapter 43's procedural requirements); *Graham v. Department of the Air*

---

[4] Nonetheless, as discussed further below, the Board must review the agency's choice of penalty as part of its review of the removal decision. *Sayers*, 954 F.3d at 1375-79.

*Force*, 46 M.S.P.R. 227, 235 (1990) (recognizing that the establishment of valid performance standards is an important substantive right of an employee under chapter 43). We therefore find that Congress did not intend that the Board apply the chapter 43 standard to performance-based actions under the Act.

¶17    In taking a chapter 75 performance-based action, an agency is not bound by any chapter 43 requirements, such as proving the validity of its performance standards, that it provided those standards in advance, or that it provided the employee with an opportunity to improve. *See Shorey v. Department of the Army*, 77 M.S.P.R. 239, 243-44 (1998) (finding that an administrative judge erred in applying chapter 43 standards to a chapter 75 case, including the requirement that an agency prove that its standards are valid); *Fairall v. Veterans Administration*, 33 M.S.P.R. 33, 40-45 (1987) (determining that an employee subject to a performance-based adverse action under chapter 75 has no right to an opportunity to improve (citing *Lovshin*, 767 F.2d at 844 (declining to find that the agency was required to prove the appellant's performance deficiencies were in his critical elements because "the procedural prerequisites of a [c]hapter 43 action . . . are . . . inapplicable" to an action taken under chapter 75))), *aff'd per curiam*, 844 F.2d 775 (Fed. Cir. 1987); *Graham*, 46 M.S.P.R. at 235-36 (explaining that in a performance-based chapter 75 action, an agency is not required to prove the validity of its standards and it is not required to establish and identify those standards in advance).

¶18    In the context of actions taken under chapter 75, agencies have great discretion in setting goals, provided they do not charge an employee with failing to have performed better than was required under his chapter 43 critical elements. *See Lovshin*, 767 F.2d at 842-43 (recognizing that agencies that have failed to properly define or evaluate performance standards under chapter 43 are nonetheless permitted to take an action under chapter 75 if they can meet the higher burden of proof). Agencies may even take an action under chapter 75 based on ad hoc goals, meaning those that were not established and identified in

advance for the employee, but rather were required when the agency took the action. *Graham*, 46 M.S.P.R. at 235. Under chapter 75, the agency must prove only that its performance standard was reasonable and provided for accurate measurement of the appellant's performance, and that the appellant's performance was unacceptable according to that measurement. *Id.* at 235-36. We find that this standard is consistent with the VA Accountability Act's requirement that an employee's performance "warrant[]" the Secretary's chosen disciplinary action. 38 U.S.C. § 714(a)(1). Thus, we find that the chapter 75 standard is appropriately applied to performance-based actions under the Act.

¶19        In the absence of any clear indication in the VA Accountability Act or its legislative history addressing the appropriate standard for performance-based actions, we conclude that the chapter 75 standard should apply. We acknowledge that the Act was intended to make it easier to discipline employees under its provisions than under chapter 75. *See Sayers*, 954 F.3d at 1376-77 (citation omitted). However, we find that the application of the lower substantial evidence standard and the Board's inability to mitigate the penalty in appeals under the Act achieves the statutory intent without requiring the creation of an entirely separate substantive standard. Because the administrative judge required the agency to prove the validity of its publication standard as required in an action under chapter 43, i.e., that its standard was reasonable, realistic, and attainable, we remand the appeal for further consideration under the appropriate standard. ID at 18; *see Thomas*, 95 M.S.P.R. 123, ¶ 12. On remand, the agency must show by substantial evidence that its performance standard was reasonable, provided for accurate measurement of the appellant's performance, and that the appellant's performance was unacceptable according to that measurement. *See Graham*, 46 M.S.P.R. at 235.

¶20        In light of our decision to remand the appeal, we do not reach the appellant's arguments on review regarding the agency's proof of its charge. These arguments include that the publication goal was unreasonable and

unattainable and that he effectively met the goal. *E.g.*, PFR File, Tab 1 at 9, 12-13, 21-22. To the extent the administrative judge has already considered and resolved these arguments, he may incorporate his prior determinations into his remand initial decision after considering and addressing any new argument and evidence presented by the parties on remand. ID at 11- 12, 17-18 & n.3, 22.

We further remand the appeal for the administrative judge to provide the parties with an opportunity to present evidence and argument regarding whether the agency's error in reviewing the proposed removal for substantial evidence was harmful.

¶21    The deciding official sustained the appellant's removal based on her conclusion that substantial evidence supported the charge of failure in a critical performance element. IAF, Tab 9 at 11. After the initial decision in this case was issued, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) decided *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290, 1296-1301 (Fed. Cir. 2021), in which it determined that the agency erred by applying a substantial evidence burden of proof to its internal review of a disciplinary action under 38 U.S.C. § 714. The court found that substantial evidence is the standard of review to be applied by the Board, not the agency. *Id.* at 1298-1300. One of the bases for the court's conclusion was that because 38 U.S.C. § 714 requires that an agency's deciding official "determine" whether "the performance or misconduct . . . warrants" the action at issue, the deciding official must use a preponderance of the evidence burden of proof. *Id.* at 1298-1301.

¶22    The Federal Circuit's decision in *Rodriguez* applies to all pending cases, regardless of when the events at issue took place. *See Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16 (recognizing that a new precedential Federal Circuit decision applied to all cases pending with the Board). The administrative judge and the parties did not have the benefit of *Rodriguez*, and therefore were unable to address its impact on this appeal. We therefore remand

this case for adjudication of whether the agency's application of the substantial evidence standard of proof was harmful error.[5]

¶23        Although 38 U.S.C. § 714 does not contain any language regarding the adjudication of a claim of harmful agency error, pursuant to 38 U.S.C. § 714(c)(4)(A), (d)(1), an administrative judge adjudicates an action taken under the VA Accountability Act under 5 U.S.C. § 7701(b)(1).  An agency's action "may not be sustained under [§ 7701(b)]" if the agency committed harmful error, based its decision on a prohibited personnel practice under 5 U.S.C. 2302(b), or "the decision was not in accordance with law." 5 U.S.C. § 7701(c)(2).  Thus, we find it appropriate to apply to actions taken under 38 U.S.C. § 714 the harmful error standard from 5 U.S.C. § 7701(c)(2).  A harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a different conclusion from the one it would have reached in the absence or cure of the error.  *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 14 (2015); 5 C.F.R. § 1201.4(r).  The appellant bears the burden of proving his affirmative defenses by preponderant evidence.  5 C.F.R. § 1201.56(b)(2)(i)(C).

---

[5] In *Rodriguez*, as here, the deciding official appeared to have applied the substantial evidence standard in sustaining the charges.  *Rodriguez*, 8 F.4th at 1297.  In remanding the case to the Board, the Federal Circuit stated that further proceedings would "[p]resumably . . . include requiring the [agency's] deciding official to determine whether the evidence as to each of the charges . . . satisfied the preponderance of the evidence standard of proof." *Id.* at 1301.  We have considered whether it would be more appropriate to remand this matter to the agency for the deciding official to make this determination before the Board reviews the action.  The Board has remanded some procedural error claims directly to agencies, but we find that the exceptional circumstances requiring such remands are not present here.  For example, the Board has remanded a removal to an agency when it was based on the appellant's failure to maintain eligibility to obtain access to classified information, but the agency did not follow its own procedures in terminating that eligibility.  *Doe v. Department of Justice*, 118 M.S.P.R. 434, ¶¶ 2-4, 20, 29-33 (2012).  Remand to the agency was necessary under those circumstances because eligibility for access to classified information is a matter within the agency's sole discretion.  *Id.*, ¶¶ 28-29, 32-33.  Here, there is nothing similarly within the agency's sole discretion concerning the level of review the deciding official afforded in this matter.

¶24     On remand, the administrative judge should provide the parties with an opportunity to present evidence and argument, including a supplemental hearing, addressing whether the agency's use of the substantial evidence standard in the removal decision constituted harmful error.  *See* 5 U.S.C. § 7701(a)(1), (b)(1). The administrative judge should then address this affirmative defense in his remand initial decision.

¶25     Regardless of whether the appellant proves harmful error in the agency's application of the substantial evidence burden of proof in the removal decision, if any argument or evidence on remand affects the administrative judge's analysis of the appellant's affirmative defenses or the agency's penalty, he should address such argument or evidence in the remand initial decision.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

The administrative judge should consider as claims of harmful error the appellant's arguments regarding the validity of his performance standards and rating, as well as the authority of the proposing official.

¶26     On review, the appellant reiterates his argument that his FY 2018 performance standards and rating are invalid because the agency failed to comply with the performance appraisal procedures set forth in the agency's Handbook 5013, Performance Management Systems.  PFR File, Tab 1 at 22-25; IAF, Tab 30 at 12-16.  He also argues on review, as he did below, that the agency violated other provisions of Handbook 5013, chapter 43, and the VA Accountability Act by, for example, failing to encourage his participation in the development of his standards or to obtain concurrence from an approval official for his Unacceptable

FY 2018 rating.[6]  PFR File, Tab 1 at 5, 21, 25-26; IAF, Tab 30 at 11-12, 14-15, 26-27.  He further reasserts his claim that his removal may not be sustained because the GRECC Director lacked the authority to propose his removal.  PFR File, Tab 1 at 15-18; IAF, Tab 30 at 7-8, 77-82.

¶27      To the extent that the administrative judge analyzed these allegations, he analyzed them as challenges to the validity of the appellant's FY 2018 performance standards.  ID at 18-19.  Although not entirely clear, he appears to have considered the validity of the appellant's standards as part of the agency's burden to prove the charge.  *Id.*  We find that these claims are more properly analyzed as allegations of harmful error, rather than as part of the agency's case.  On remand, the administrative judge should address the appellant's various claims of procedural error under the harmful error standard.

The administrative judge should address the appellant's affirmative defense that the agency violated certain merit system principles.

¶28      On review, the appellant reiterates his argument from below that because the publication standard was "arbitrary," the agency violated the merit system principle at 5 U.S.C. § 2301(b)(6), which provides that "[e]mployees should be retained based on the adequacy of their performance."  PFR File, Tab 1 at 21-22; IAF, Tab 30 at 29.  Likewise, he restates his argument that the standard violated the merit system principle at 5 U.S.C. § 2301(b)(8)(A), which provides, in part,

---

[6] The appellant argues on review that, during the hearing below, the administrative judge improperly admitted into evidence copies of the following two documents: (1) the appellant's FY 2018 performance appraisal, which was signed by the approval official on November 19, 2018, IAF, Tab 20 at 565, and (2) the June 23, 2017 proposed reprimand, *id.* at 79-80.  PFR File, Tab 1 at 25-27.  An administrative judge has broad discretion to control the proceedings before him and his rulings regarding the admissibility of evidence are subject to review by the Board under an abuse of discretion standard.  *Lopes v. Department of the Navy*, 119 M.S.P.R. 106, ¶ 11 (2012).  The appellant has not shown that the administrative judge exceeded his broad authority here.  Therefore, we decline to overturn the administrative judge's evidentiary rulings.

that "[e]mployees should be protected against arbitrary action." PFR File, Tab 1 at 21-22; IAF, Tab 30 at 29.

¶29       As set forth above, an agency's action may not be sustained if it was based on any personnel practice prohibited by 5 U.S.C. § 2302(b), which includes "violat[ing] any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." 5 U.S.C. §§ 2302(b)(12), 7701(c)(2)(B).  These principles include the two identified by the appellant regarding employee retention and arbitrary actions.  The administrative judge did not directly address the appellant's claims regarding the agency's violation of these merit system principles.[7]  Therefore, on remand, he must do so. *See Lovshin*, 767 F.2d at 841-42 (recognizing that an alleged violation of the merit system principles is a defense to an action under chapter 75); *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 19 (2012) (finding that an appellant was entitled to a full opportunity to present evidence on remand regarding her claims that the agency violated 5 U.S.C. § 2302(b)(12)).  The administrative judge should allow the parties to present additional evidence and argument on these claims, if appropriate.

On remand, the administrative judge should reassess the appellant's claim of national origin discrimination consistent with *Pridgen.*

¶30       An appellant who raises an affirmative defense of disparate treatment under Title VII, including an affirmative defense of national origin discrimination, bears the burden of proving by preponderant evidence that the prohibited consideration was a motivating factor in the agency's action or decision.  *Pridgen*, 2022 MSPB

---

[7] The merit system principles are not self-executing.  Unless a law, rule, or regulation implementing or directly concerning the principles is violated, the principles themselves may not be made the basis of an affirmative defense. *Pollard v. Office of Personnel Management*, 52 M.S.P.R. 566, 569-70 (1992).  The appellant in this case has tied his affirmative defense to specific statutory provisions that he argues execute the merit system principles.  IAF, Tab 21 at 79-85.

31, ¶¶ 20-21.  However, for the appellant to obtain full relief under the statute, he must prove that the prohibited consideration was a but-for cause of the action or decision.  *Id.*, ¶ 22.  An appellant may prove a claim of discrimination under Title VII by any combination of direct or indirect evidence, including evidence of the agency's treatment of similarly situated comparators outside his protected class.  *Id.*, ¶ 24.

¶31        The appellant challenges the administrative judge's finding that he failed to prove his affirmative defense of disparate treatment based on his national origin.  PFR File, Tab 1 at 13-15; ID at 20-23.  Specifically, the appellant argues that the administrative judge improperly included FY 2017 performance in his comparator analysis.  PFR File, Tab 1 at 13-14.  However, even if the administrative judge erred in doing so, the comparators' FY 2017 performance was merely an alternative basis for the administrative judge's finding that they were not similarly situated to the appellant.  ID at 22 n.4.  For the other reasons that the administrative judge explained, we agree with him that these individuals were not similarly situated to the appellant for purposes of Title VII.  ID at 22; *see Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014) (holding that employees are similarly situated for purposes of Title VII when the material aspects of their employment situation are the same, including their position, job duties, and supervisory chain).  The appellant also argues that one specific comparator was similarly situated to him because this comparator also failed to produce at least three peer-reviewed papers in FY 2017.  PFR File, Tab 1 at 14-15.  However, unlike the appellant, this comparator improved his performance and produced the requisite number of peer-reviewed papers in FY 2018.  IAF, Tab 20 at 498-505.  We therefore agree with the administrative judge that this individual was not similarly situated to the appellant.  ID at 22.

¶32        Although the appellant has not identified any reversible error in the administrative judge's analysis, we find that further adjudication of the discrimination issue is warranted.  Specifically, the administrative judge

adjudicated the appellant's defense under *Savage v. Department of the Army*, [122 M.S.P.R. 612](#) (2015), but during the pendency of the petition for review, the Board overruled the holding in *Savage* that the analytical framework identified in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792](#), 802-04 (1973), is inapplicable to Board proceedings. *Pridgen*, [2022 MSPB 31](#), ¶ 25. On remand, the administrative judge shall reassess the appellant's affirmative defense of national origin discrimination in accordance with *Pridgen*, [2022 MSPB 31](#), ¶¶ 21-24. The administrative judge should afford the parties an additional opportunity to submit relevant evidence and argument on this issue, but he may incorporate his previous findings of fact to the extent appropriate.

<u>On remand, the administrative judge should address the appellant's due process claim raised for the first time on review.</u>

¶33    The appellant also raises a due process claim on review, alleging for the first time that the deciding official improperly considered evidence pertaining to his FY 2017 performance deficiencies in deciding to remove him. PFR File, Tab 1 at 13-14, 27. He reasons that neither the notice of proposed removal nor the evidence file that the proposing official provided to the deciding official included evidence about the appellant's 2017 performance deficiencies. *Id.*

¶34    Generally, the Board will not consider an argument raised for the first time on petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, [123 M.S.P.R. 245](#), ¶ 6 (2016). The appellant has not made such a showing. However, because we are remanding the appeal to the administrative judge to reopen the record on other grounds, we exercise our discretion to instruct the administrative judge to permit the parties to present evidence and argument on this issue on remand. *See Powers v. Department of the Treasury*, [86 M.S.P.R. 256](#), ¶ 10 n.3 (2000) (rejecting an agency's argument that an administrative judge lacked the authority to sua sponte raise the issue of a violation of procedural due process) (citing *Robinson v. Department of Veterans*

*Affairs*, [72 M.S.P.R. 444](), 449 n.3 (1996) (recognizing that both administrative judges and the Board have, sua sponte, refused to turn a blind eye to clear error that affected an appellant's rights)); [5 C.F.R. § 1201.115](e) (reserving to the Board the authority to consider any issue in an appeal before it).  The administrative judge should address the appellant's due process claim in his remand initial decision.

In analyzing the appellant's whistleblower reprisal claim on remand, the administrative judge should address the appellant's additional disclosures and activities.

¶35      In a chapter 43 or chapter 75 appeal, the Board adjudicates an appellant's claim of whistleblower reprisal as an affirmative defense.  *Pridgen*, [2022 MSPB 31](), ¶ 49; *Campbell v. Department of the Army*, [123 M.S.P.R. 674](), ¶ 11 (2016).  In such instances, once the agency proves its adverse action case, the appellant must prove by preponderant evidence that he made a protected disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the personnel action at issue.  *Pridgen*, [2022 MSPB 31](), ¶ 49; *Campbell*, [123 M.S.P.R. 674](), ¶ 11.  If the appellant meets this burden, the agency must prove by clear and convincing evidence that it would have taken the same action absent the protected disclosure or activity.  *Pridgen*, [2022 MSPB 31](), ¶ 49; *Campbell*, [123 M.S.P.R. 674](), ¶ 12.  In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Carr v. Social Security Administration*, [185 F.3d 1318](), 1323 (Fed. Cir. 1999).

¶36      We find that this analytical framework is appropriate for adjudicating a claim of whistleblower reprisal raised in an appeal of an action taken pursuant to

the VA Accountability Act. We have previously observed that, under the Act, Congress generally intended to retain existing protections for agency employees. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 22 (citations omitted); *see Sayers*, 954 F.3d at 1377 (concluding that Congress "intend[ed] to maintain" employees' due process rights in connection with actions taken under 38 U.S.C. § 714 (citations omitted)). More specifically, Congress intended to preserve, and in fact expand, the preexisting protections for whistleblowers. *E.g.*, 163 Cong. Rec. H4867-07, H4868 (daily ed. June 13, 2017) (statement of Rep. Buck that the VA Accountability Act "bolsters protection for whistleblowers" by creating a new office within the agency to protect them and by holding supervisors accountable for how well they protect whistleblowers); 163 Cong. Rec. H4863-02, H4864 (daily ed. June 13, 2017) (statement of Rep. Roby that the VA Accountability Act "also increases protections for whistleblowers who put themselves at risk to improve the lives and care for veterans"); 163 Cong. Rec. S3261-01, S3276 (daily ed. June 6, 2017) (statement of Sen. Nelson that the VA Accountability Act would "create new protections for whistleblowers"). Title I of the VA Accountability Act establishes an Office of Accountability and Whistleblower Protection within the agency. Pub. L. No. 115-41, §§ 101-103, 131 Stat. 862, 863-68 (codified at 38 U.S.C. § 323). The presidentially appointed head of this office reports directly to the Secretary of the agency. 38 U.S.C. § 323(b). The office is charged with various duties related to the protection of whistleblowers, such as recommending discipline for alleged retaliators, and is required to report to Congress annually. 38 U.S.C. §323(c), (f).

¶37    Further, when an employee files a whistleblower reprisal complaint with the Office of Special Counsel or the agency's Office of Accountability and Whistleblower Protection, the agency's action against that employee generally is forestalled until the investigation is complete. 5 U.S.C. § 1214(f); 38 U.S.C. § 714(e)(2). In light of Title I of the VA Accountability Act, the enhanced protection for whistleblowers set forth in 38 U.S.C. § 714(e), and the stated intent

of Congress to continue protections for whistleblowers, we find it appropriate to adjudicate whistleblower reprisal claims under the VA Accountability Act in the same manner as we have adjudicated them when raised in an appeal of an action taken under chapter 43 and chapter 75.

¶38    The administrative judge found that the appellant proved that he made a protected disclosure to the deciding official in responding to his proposed removal.  ID at 23-24.  Specifically, the administrative judge found protected the appellant's disclosure that the proposing official altered the appellant's FY 2018 performance standards after digitally signing them.  *Id.*; IAF, Tab 22 at 104.  The administrative judge also found that the appellant proved this disclosure was a contributing factor in the deciding official's determination to remove the appellant approximately 2 weeks later.   ID at 16, 24-25; *see Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18-21 (2015) (explaining that an employee may demonstrate that a protected disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within 1 to 2 years of the disclosure).  Neither party challenges these findings on review and we decline to disturb them.

¶39    The appellant, who has been pro se throughout the proceedings in this appeal, alleged below that he made a number of additional disclosures to the deciding official regarding improprieties in the issuance of his FY 2017 and 2018 performance standards and appraisals.  IAF, Tab 21 at 12-22, Tab 22 at 101-04, Tab 30 at 63, 73-75.  He also alleged that he contacted the agency's OIG about these improprieties.   IAF, Tab 22 at 102; *Pridgen*, 2022 MSPB 31, ¶ 62 (recognizing that the activity of contacting an agency's OIG generally is protected under 5 U.S.C. § 2302(b)(9)(C) regardless of the content of what an appellant discloses to the OIG).  In his prehearing conference summary, the administrative judge acknowledged the appellant's whistleblower reprisal claim generally but did not identify the specific alleged protected disclosures and

activities at issue. IAF, Tab 26 at 4-6. In the initial decision, the administrative judge addressed only the disclosure discussed above. Although the appellant does not reassert his additional disclosures and activities on review, in light of the fact that we are remanding the appeal on other grounds, the administrative judge should address them in his remand initial decision.

¶40        As to the disclosure that he adjudicated, after analyzing the *Carr* factors, the administrative judge found that the agency proved by clear and convincing evidence that it would have removed the appellant absent this disclosure. ID at 25-27. As for the first *Carr* factor, the administrative judge found that the evidence supporting the appellant's removal was "extremely compelling" because the agency proved that the appellant failed to meet a critical element of his performance standards 2 years in a row. ID at 26. Turning to the second *Carr* factor, the administrative judge found that the deciding official did not have a motive to retaliate against the appellant for his disclosure because she had been the Bedford VA Director for a short period of time when she issued the removal letter; thus, she would have had no motive to cover up alleged misconduct by subordinate supervisors based on a belief that it might cast her managerial skills in a negative light. ID at 26-27. As for the third *Carr* factor, the administrative judge found that this factor weighed in favor of the agency because there was no proof that the agency retained underperforming research health scientists who were not whistleblowers. *Id.*

¶41        Because the administrative judge will be revisiting the charge on remand, he also must consider on remand any additional evidence and argument concerning the charge when evaluating the first *Carr* factor. As to the second *Carr* factor, in *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012), the Federal Circuit cautioned the Board against taking an "unduly dismissive and restrictive view" of retaliatory motive, holding that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if

they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." Thus, in evaluating the second *Carr* factor on remand, the administrative judge should consider that the appellant's disclosures may have reflected poorly on the Bedford VA Director as a representative of the agency's general institutional interest in the validity of its performance management, which may be sufficient to establish a significant retaliatory motive. *See Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶¶ 3, 69, 71 (2011) (finding that the managers who proposed and decided to remove an appellant had a motive to retaliate because the appellant's disclosures reflected on them as representatives of the general institutional interests of the agency).

¶42    As for the third *Carr* factor, the administrative judge found that this factor weighed in favor of the agency because there was no proof that the agency retained underperforming research health scientists who were not whistleblowers. ID at 27. However, in *Whitmore*, the court held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce evidence "may be at the agency's peril" and may cause the agency to fail to meet its clear and convincing burden. *Whitmore*, 680 F.3d at 1374. Further, because it is the agency's burden of proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18 (citing *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018)).

¶43    In summary, on remand, the administrative judge should reconsider the appellant's whistleblower reprisal claim. In doing so, he should consider the appellant's additional alleged protected disclosures and activities. The

administrative judge should also conduct a new analysis of the *Carr* factors consistent with this Opinion and Order.[8]

<u>On remand, the administrative judge should review the agency's penalty selection by considering the *Douglas* factors.</u>[9]

¶44    The administrative judge found that because the agency proved the charge by substantial evidence, the removal penalty must be affirmed.  ID at 27-28.  Therefore, he found it was unnecessary to review the agency's penalty determination or address the *Douglas* factors.  ID at 28.  At the time of the initial decision, the administrative judge did not have the benefit of the Federal Circuit's decisions in *Sayers*, *Brenner*, and *Connor v. Department of Veterans Affairs*, 8 F.4th 1319 (Fed. Cir. 2021).

¶45    Under the VA Accountability Act, "if the decision of the Secretary is supported by substantial evidence, the . . . Board [and its administrative judges]

---

[8] The appellant also argues on review that the administrative judge failed to address several of his affirmative defenses; however, he does not provide any specifics regarding those claims.  PFR File, Tab 1 at 28-29.  Instead, he refers to those affirmative defenses by category (e.g., harmful error, prohibited personnel practices) and cites the sections of the pleading he filed below in which he raised these claims. *Id.* (citing IAF, Tab 30 at 10-112).  The appellant is essentially attempting to incorporate by reference his submission below into his petition for review.  However, the Board has held attempts to incorporate by reference pleadings that were filed below do not satisfy the requirement of 5 C.F.R. § 1201.115 that the petitioning party set forth specific objections to the initial decision.  *Cole v. Department of Transportation*, 18 M.S.P.R. 102, 104 n.3 (1983).  Therefore, we have not considered any of the appellant's arguments not specifically raised in his petition for review.  As a result, we also decline to consider the appellant's claim that, because the administrative judge did not address each of his affirmative defenses, the decision is not "final and complete," as required by 38 U.S.C. § 714(d)(1).

[9] When a chapter 75 adverse action is challenged before the Board, the agency must prove a nexus between the alleged misconduct and the efficiency of the service.  *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997) (relying, in part, on 5 U.S.C. 7513(a) (restricting agencies to taking actions "only for such cause as will promote the efficiency of the service")).  The administrative judge did not make a determination as to whether this requirement applies to an action taken under 38 U.S.C. § 714 or, if so, whether the agency met its burden.  Because the parties have not raised this issue on review, we decline to address it here.  *See Cole*, 18 M.S.P.R. at 104 n.3.

shall not mitigate the penalty prescribed by the Secretary" in an action taken under 38 U.S.C. § 714. 38 U.S.C. §§ 714(d)(2)(B), (d)(3)(C). The Federal Circuit in *Sayers* clarified that, while the Board may not "mitigate the penalty," nevertheless, "§ 714 requires the Board to review for substantial evidence the entirety of the [agency's] removal decision—including the penalty—rather than merely confirming that the record contains substantial evidence that the alleged conduct leading to the adverse action actually occurred." 954 F.3d at 1379. In *Brenner*, 990 F.3d at 1323-27, the court further held that the Board's review must include the agency's penalty determination whether the action is based on misconduct or performance.

¶46        Other than the requirement that the decision of the Secretary be supported by substantial evidence, the VA Accountability Act does not provide guidance for reviewing the agency's penalty. Therefore, as with our analysis of the charge, we start by examining the standard of penalty review used by the Board in other performance-based actions. The Board does not review the agency's penalty in chapter 43 actions, *Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1565 (Fed. Cir. 1985), and the Federal Circuit has rejected applying chapter 43's lack of penalty review to actions taken under 38 U.S.C. § 714, *Brenner*, 990 F.3d at 1326-27; *Sayers*, 954 F.3d at 1378-79. Therefore, chapter 43 cannot provide any guidance on this issue.

¶47        The Board recognized in *Douglas* that it inherited from its predecessor, the Civil Service Commission, the authority to review the appropriateness of agency penalties. *Douglas*, 280 M.S.P.R. at 298-99. This review included consideration of a nonexhaustive list of factors, both aggravating and mitigating, that are relevant to determining the propriety of a penalty. *Id.* at 303-06. Congress presumably was aware of this history of Board penalty review, including the application of the *Douglas* factors, when it enacted the VA Accountability Act. *See Sayers*, 954 F.3d at 1375.

¶48    Although the VA Accountability Act prohibits the Board from mitigating the agency's penalty, we find that the Board's framework for chapter 75 penalty analysis is otherwise consistent with the Act.  The Board's penalty review is essentially to assure that the agency conscientiously considered the relevant factors and struck a responsible balance of the factors within tolerable limits of reasonableness.  *Douglas*, 5 M.S.P.R. at 306.  If the Board sustains an agency's charge in a chapter 75 action, it will affirm the agency-imposed penalty under *Douglas* unless it finds that the agency failed to weigh the relevant factors or the penalty imposed clearly exceeded the bounds of reasonableness.  *Wiley v. U.S. Postal Service*, 102 M.S.P.R. 535, ¶ 14 (2006), *aff'd per curiam*, 218 F. App'x 1001 (Fed. Cir. 2007).

¶49    Our determination is consistent with the Federal Circuit's decision in *Connor*.  In that case, the Federal Circuit determined that the Board must consider and apply the *Douglas* factors when reviewing penalties under the VA Accountability Act.  *Connor*, 8 F.4th at 1325-26.  The court held that, although the VA Accountability Act precludes the Board from mitigating the agency's chosen penalty, "[i]t does not alter the penalty review with respect to the *Douglas* factors."  *Id.* at 1326.  Because the Board cannot mitigate the penalty, "if the Board determines that the [agency] failed to consider the *Douglas* factors or that the chosen penalty is unreasonable, the Board must remand to the [agency] for a redetermination of the penalty."  *Id.* at 1326-27 (citing *Brenner*, 990 F.3d at 1325 (determining that "if the [Board] concludes that the [agency's] removal decision is unsupported by substantial evidence, the [Board] should remand to the [agency] for further proceedings")).

¶50    The deciding official referenced some of the *Dougla*s factors in making her removal decision.  IAF, Tab 9 at 11, 76-77.  The appellant suggested, below, that she did review all of the relevant factors and disagreed with the weight she gave to the factors she expressly considered in the removal decision.  IAF, Tab 30 at 101-103.  Because he did not have the benefit of the Federal Circuit's recent

decisions regarding the Board's obligation to review the penalty in an action taken under the VA Accountability Act, the administrative judge did not identify the penalty as an issue to be adjudicated below or provide guidance to the parties on the penalty issue. IAF, Tab 26 at 3-8. On remand, he should permit the parties to submit additional evidence and argument on the penalty issue. In reviewing the penalty, the administrative judge should determine whether the agency proved by substantial evidence that it properly applied the relevant *Douglas* factors and whether the agency's penalty was reasonable and, if not, remand the appellant's removal to the agency for a new removal decision. *See Connor*, 8 F.4th at 1326-27; *Sayers*, 954 F.3d at 1375-76, 1379 (identifying the Board's scope of review of the penalty in an action taken under the VA Accountability Act as substantial evidence); *see Wiley*, 102 M.S.P.R. 535, ¶ 14.

## ORDER

¶51    We vacate the initial decision and remand the appeal to the regional office for further adjudication consistent with this Opinion and Order.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.