UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
**2024 MSPB 12**

Docket No. PH-0714-20-0258-I-1

**Jerry Michael Sprouse,**

**Appellant,**

v.

**Department of Veterans Affairs,**

**Agency.**

October 25, 2024

Elchonon Reizes, Houston, Texas, for the appellant.

Christine Beam, Esquire, and Marcus S. Graham, Esquire, Pittsburgh, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## OPINION AND ORDER

¶1 The agency has filed a petition for review of the initial decision, which reversed the appellant's removal, taken under the authority of 38 U.S.C. § 714. For the reasons set forth below, we GRANT the agency's petition, VACATE the initial decision, and REMAND this appeal to the Northeastern Regional Office for further adjudication in accordance with this Opinion and Order.

## BACKGROUND

¶2 Prior to his removal, the appellant was employed by the agency's Veterans Health Administration as a GS-11 Supervisory Inventory Management Specialist

at the Butler Health Care Center (HCC) in Butler, Pennsylvania. Initial Appeal File (IAF), Tab 5 at 8, 200. In this position, he was authorized to certify the agency's inventories of certain controlled substances and narcotics. *Id.* at 39. In August 2019, the appellant's wife, who was also an agency employee and was separated from the appellant, contacted agency police and informed them of her suspicion that the appellant was engaging in illicit drug transactions and consuming alcohol on agency property. IAF, Tab 5 at 21, Tab 12 at 11-12, Tab 13 at 22-25. She explained that she had read text messages between the appellant and another agency employee, which she believed concerned drug transactions. IAF, Tab 13 at 22-25. Based on her statements, agency police commenced an investigation into possible criminal activity on agency property. IAF, Tab 13 at 19-20, 30-31, Tab 18 at 4.

¶3        On November 17, 2019, agency police installed a hidden video camera in the appellant's office. IAF, Tab 13 at 28, Tab 18 at 5. Although the appellant was the only individual assigned to the office and regularly kept his door shut, there was a community printer in the office, and other employees would occasionally enter to retrieve printouts or make copies. IAF, Tab 18 at 5. Before installing the hidden camera, agency police obtained the approval of the Director of the facility. IAF, Tab 12 at 17, Tab 18 at 5. However, agency police did not obtain a search warrant or notify the appellant that the camera had been installed. IAF, Tab 18 at 5.

¶4        On December 11, 2019, the appellant was captured on video crushing and snorting pills and consuming alcohol in his office. *Id.* On December 13, 2019, the appellant's manager and another agency official confronted him with this information. IAF, Tab 5 at 21, Tab 18 at 5. At that point, the appellant admitted to consuming alcohol and pills in the office, and to purchasing pills from another employee (employee A) on agency property. IAF, Tab 5 at 19, 21, Tab 18 at 5-6.

¶5        After a brief break, during which the appellant's manager alerted an agency police officer that the appellant was in possession of alcohol, the officer joined

the meeting. IAF, Tab 5 at 22, 28. The appellant agreed to the officer's request for permission to open the appellant's personal backpack, which contained a bottle of alcohol, and to submit to a breathalyzer test, which showed a result of 0.062. *Id.* at 19, 23, 28. The police officer gave the appellant a verbal warning that day for bringing "beverages or narcotics" to agency property. *Id.* at 27.

¶6    The appellant agreed to the police officer's request to help with the investigation of employee A. IAF, Tab 5 at 24, Tab 13 at 38. The agency opened a criminal investigation into employee A. IAF, Tab 22 at 12. On December 17, 2019, and again on January 14, 2020, the appellant provided voluntary witness statements concerning his transactions with employee A to agency police. IAF, Tab 5 at 29-32. In the latter statement, he acknowledged that video recordings taken at other locations in the facility on October 24 and December 12, 2019, showed him meeting with employee A to purchase oxycodone. *Id.* at 19-20, 29-30.

¶7    The agency removed the appellant effective March 28, 2020, based on the following three charges: (1) conduct unbecoming a Federal employee, with four underlying specifications; (2) possession of alcohol; and (3) use of alcohol. *Id.* at 8-13, 15-18. In the first three specifications under charge 1, the agency alleged that the appellant purchased employee A's prescribed oxycodone pills on HCC premises twice on October 24, 2019, and once on December 12, 2019. *Id.* at 15-16. The agency explained in the proposed removal that the evidence underlying these specifications was the appellant's January 14, 2020 admission, obtained when shown recordings of him and employee A meeting on HCC premises on the dates in question, that employee A was selling him drugs. *Id.* at 15-16, 29-31. The agency alleged under specification 4 of charge 1 that, during the December 13, 2019 discussion with his manager, the appellant acknowledged that he had crushed and snorted either oxycontin or oxycodone pills while in his office on agency property. *Id.* at 15-16. Under charges 2 and 3, the agency stated that, on December 13, 2019, the appellant admitted to

possession of alcohol and produced a bottle of alcohol from his backpack. *Id.* at 16. Further, he consented to a breathalyzer test, which showed a blood alcohol level of 0.062. *Id.*

¶8 This appeal followed. IAF, Tab 1. The appellant did not dispute the substance of the charges, but he argued that the penalty was unreasonable and that the agency had violated his Fourth Amendment rights and discriminated against him on the basis of sex. IAF, Tab 5 at 14, Tab 13 at 8-9, Tab 14 at 1, Tab 18 at 5-6. The appellant elected to waive his right to a hearing. IAF, Tab 14 at 1.

¶9 The administrative judge reversed the removal action, finding that agency police violated the appellant's Fourth Amendment rights by placing a hidden camera in his office for the purpose of conducting a criminal investigation without obtaining a warrant. IAF, Tab 29, Initial Decision (ID) at 1, 8-10. In determining that the appellant's Fourth Amendment rights were implicated by the agency police's actions, the administrative judge found that the appellant had a reasonable expectation of privacy in his office from police searches, and the HCC Director's consent to the placement of the camera did not excuse the police from the requirement of obtaining a warrant. ID at 8-10. The administrative judge further concluded that the exclusionary rule applied to Board proceedings and that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) had overruled the Board's prior decision to the contrary, *Delk v. Department of the Interior*, 57 M.S.P.R. 528 (1993). ID at 6 & n.1. He found that the appellant failed to establish his discrimination claim. ID at 10-11. Because the administrative judge reversed the action on Fourth Amendment grounds, he did not address the appropriateness of the penalty. ID at 10.

¶10 The agency has filed a petition for review in which it contests the administrative judge's findings on the Fourth Amendment claim. Petition for Review (PFR) File, Tab 1. The appellant has filed a response, to which the agency has replied. PFR File, Tabs 3, 5.

ANALYSIS

<u>The Board's decision in *Delk* that the exclusionary rule does not apply to Board proceedings remains good law.</u>

*The Federal Circuit has not overruled the Board's prohibition on applying the exclusionary rule.*

¶11    As set forth above, the administrative judge determined in the initial decision that the exclusionary rule applied to Board proceedings and that the Board's prior decision to the contrary, *Delk*, 57 M.S.P.R. at 530-32, had since been overruled by the Federal Circuit in *Wiley v. Department of Justice*, 328 F.3d 1346 (Fed. Cir. 2003).  ID at 6 & n.1.  On review, the agency argues that the administrative judge's reliance on *Wiley* was misplaced because the court did not address the exclusionary rule in *Wiley*.  PFR File, Tab 1 at 12.  We agree.

¶12    In criminal proceedings, the exclusionary rule prohibits using evidence obtained in violation of the Fourth Amendment against the subject of the violating search and seizure.  *United States v. Calandra*, 414 U.S. 338, 347 (1974).  It "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right."  *Id.* at 348.  In *Wiley*, 328 F.3d at 1347-49, 1353-57, the Federal Circuit concluded that the Board improperly sustained the removal of a Federal employee that was based on his refusal to submit to a search of his car because the search, if conducted, would have violated the Fourth Amendment. However, the court reached this conclusion without addressing the application of the exclusionary rule to Board proceedings.  *Id.* at 1357.  Therefore, the administrative judge erred in finding that the Federal Circuit overruled *Delk*.[1]

---

[1] In an unpublished decision issued 17 years later, the Federal Circuit observed that the Board has held that the exclusionary rule does not apply in Board proceedings.  *Martin v. Department of Homeland Security*, 810 F. App'x 867, 870-71 & n.1 (Fed. Cir. 2020) (per curiam).  However, the court did not address the propriety of this holding.  *Id.*

> *We affirm the longstanding rule that the exclusionary rule does not apply in Board proceedings.*

¶13     In *Delk*, 57 M.S.P.R. 528, the Board grappled with the very issue presented here—whether to expand the scope of the exclusionary rule to include Board proceedings. Specifically, at issue in *Delk* was the admissibility of evidence obtained by the U.S. Park Police (USPP) that the National Park Service (NPS) relied on in suspending Mr. Delk, namely, the discovery of NPS property during a search of Mr. Delk's home after obtaining a search warrant. *Id.* at 529-30. Although the Board administrative judge found that the USPP violated Mr. Delk's Fourth Amendment rights because it exceeded the scope of the search warrant, he nonetheless concluded, and the Board affirmed, that the evidence was admissible because the exclusionary rule does not apply to Board proceedings. *Id.* at 529-32 & n.1. In reaching this conclusion, the Board observed that, as stated by the Supreme Court, "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, [F]ederal or state." *Id.* at 531 (quoting *United States v. Janis*, 428 U.S. 433, 447 (1976)). This statement remains as true today as it was when the *Delk* decision was issued 30 years ago. In fact, the Supreme Court has, to date, consistently declined to apply the exclusionary rule outside of criminal trials—even when the proceedings are tangential to a criminal trial. *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 364-69 & n.4 (1998) (declining to apply the rule to parole revocation hearings); *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1041-50 (1984) (declining to apply the rule to civil alien deportation proceedings); *Janis*, 428 U.S. at 447-60 (declining to apply the rule to Federal civil tax proceedings); *see Calandra*, 414 U.S. at 349-55 (declining to apply the rule to grand jury proceedings).

¶14     Furthermore, the Board reasoned that application of the exclusionary rule would not have a deterrent effect on the NPS officials who initiated the adverse action, because they played no role in the unlawful search, or on future unlawful

police conduct, since the "zone of primary interest" for agency police was criminal investigation and prosecution, not investigating employee misconduct. *Delk*, 57 M.S.P.R. at 531-32; *see Scott*, 524 U.S. at 368 (concluding that the application of the exclusionary rule to parole revocation proceedings would have a minimal deterrent effect on police officers, whose zone of primary interest was "obtaining convictions of those who commit crimes") (citation omitted). The Board also concluded that any marginal deterrent value on police behavior by suppressing illegally seized evidence in administrative proceedings was outweighed by the societal cost of retaining Government employees who engage in improper conduct. *Delk*, 57 M.S.P.R. at 532.

¶15    On review, the appellant argues that the deterrent effects of the exclusionary rule are served here. PFR File, Tab 3 at 8-11. Citing to what he identifies as an agency standard operating procedure (SOP), the appellant argues that, unlike the USPP who conducted the search at issue in *Delk*, the "zone of primary interest" of agency police located at his former duty station included employee activities. PFR File, Tab 3 at 8. However, the appellant has not suggested that the agency police's primary interest extends beyond criminal matters. *Id.* Further, there is no evidence that agency police are primarily tasked with investigating employee misconduct for the purposes of taking an administrative action. In fact, the SOP does not refer to employee misconduct. IAF, Tab 12 at 19-22. Instead, the SOP states that the focus of agency police investigations is alleged crimes occurring on agency property, and investigations are authorized "to the extent necessary to determine whether a crime has been committed and to collect and preserve basic information and evidence relative to the incident." *Id.* at 19. Therefore, like the USPP police in *Delk*, agency police focus on crimes occurring on agency property, rather than employee misconduct. *Delk*, 57 M.S.P.R. at 531.

¶16    In sum, we reaffirm our longstanding holding that the exclusionary rule does not apply in Board proceedings. Therefore, regardless of whether the agency's installation of the camera in the appellant's office violated the Fourth

Amendment, the evidence on which the appellant's removal was premised will be considered in determining the propriety of that action.[2]

<u>We must remand this appeal for further development of the evidence.</u>

¶17     As indicated above, the appellant elected not to proceed to a hearing. IAF, Tab 14 at 1. The parties stipulated to many of the facts underlying the agency's charges. IAF, Tab 5 at 15-16, Tab 18. Nonetheless, we decline to resolve whether the agency proved those charges. At the direction of the administrative judge, the parties primarily focused on the Fourth Amendment issue in their closing submissions. IAF, Tab 14 at 1, Tabs 19-22. Therefore, they should be provided with an opportunity to more thoroughly address the charges and penalty on remand.

¶18     In addition, since the administrative judge issued the initial decision, the Federal Circuit held that it is error for a deciding official to sustain an action taken under 38 U.S.C. § 714 by substantial, instead of preponderant, evidence. *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290, 1298-1301 (Fed. Cir. 2021). Here, the decision letter reflects the deciding official's conclusion that the charges "were supported by substantial evidence." IAF, Tab 5 at 8. The administrative judge and the parties did not have the benefit of the *Rodriguez* decision below. Therefore, we must remand this issue to the administrative judge for a determination of whether the deciding official's use of the substantial evidence standard was harmful. *See Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶¶ 21-23. On remand, the administrative judge should provide the parties with an opportunity to present evidence and argument addressing whether the agency's use of the substantial evidence standard in the removal decision constituted harmful error. *Id.*, ¶ 24. The administrative judge should then address this affirmative defense in his remand initial decision. *Id.*

---

[2] Accordingly, because the exclusionary rule does not apply to Board proceedings, we need not resolve in this case whether the appellant had a reasonable expectation of privacy in his office or other issues related to the Fourth Amendment.

¶19      On review, the parties have not challenged the administrative judge's finding that the appellant did not prove his claim of disparate treatment based on sex. ID at 6-8, 10-11. Although the appellant has not identified any reversible error in the administrative judge's analysis, we find that further adjudication of this claim is warranted. Specifically, the administrative judge adjudicated the appellant's defense under the standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), but during the pendency of the petition for review, the Board overruled, in part, and clarified, in part, the *Savage* decision. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. The Board further clarified the burdens of proof in Title VII disparate treatment discrimination claims in *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 11. On remand, the administrative judge shall reassess the appellant's affirmative defense of sex discrimination in accordance with *Pridgen*, 2022 MSPB 31, ¶¶ 21-24, and *Wilson*, 2024 MSPB 3, ¶¶ 11-19. The administrative judge should advise the parties of their burden and afford them an additional opportunity to submit relevant evidence and argument on this issue, but he may incorporate his previous findings of fact to the extent appropriate. *Semenov*, 2023 MSPB 16, ¶ 32.

¶20      Finally, because he reversed the agency's action based on his determination that it violated the appellant's Fourth Amendment rights, the administrative judge did not reach the issue of whether removal was an appropriate penalty. ID at 10. If the administrative judge reaches this issue on remand, he should determine whether the agency proved by substantial evidence that it properly applied the relevant *Douglas* factors and whether the agency's penalty was reasonable and, if not, remand the appellant's removal to the agency for a new decision. *Semenov*, 2023 MSPB 16, ¶ 50; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280,

305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations).[3]

## ORDER

¶21     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Opinion and Order.


_Gina K. Grippando_
_____
Gina K. Grippando
Clerk of the Board
Washington, D.C.

---

[3] If remanded to the agency, the agency should be mindful of its obligations to provide the appellant with the necessary due process. *See Brenner v. Department of Veterans Affairs*, 990 F.3d 1313, 1324 (Fed. Cir. 2021) (observing that the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 maintains due process protections for employees); *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1375-77 (Fed. Cir. 1999).