NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL D. OLSZAK,**
*Petitioner,*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent.*

---

2012-3031

---

Petition for review of the Merit Systems Protection Board in DC0842100561-I-1.

---

Decided: April 10, 2012

---

Michael D. Olszak, of Vienna, Virginia, pro se.

DAVID F. D'ALESSANDRIS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

_____

Before BRYSON, PROST, and O'MALLEY, *Circuit Judges*.

PER CURIAM.

## DECISION

Petitioner Michael D. Olszak appeals the decision of the Merit Systems Protection Board upholding the decision of his employer, the Department of Homeland Security, denying his request for enhanced retirement benefits. We affirm.

## BACKGROUND

Since 1989, Mr. Olszak has worked in various capacities for U.S. Customs and Border Protection ("CBP"), both before and after it became part of the Department of Homeland Security ("DHS") in 2002. From 1989 to November 26, 1994, Mr. Olszak worked as an Immigration Inspector. On November 27, 1994, he began working as an Asylum Officer, a position he held until January of 1998. Since then, Mr. Olszak has held several other positions with CBP and DHS. The issue in this appeal is the proper classification of the Asylum Officer position.

In 2007, Congress amended the statutes governing the Civil Service Retirement System and the Federal Employees Retirement System to extend to "customs and border protection officers" the enhanced retirement benefits provided to federal law enforcement officers. *See* Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, § 535, 121 Stat. 1844, 2075 (2007). The new statute defines the term "customs and border protection officer" to mean a DHS employee who "holds a position within the GS-1895 job series . . . or any successor position" and

"whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry, including any such employee who is transferred directly to a supervisory or administrative position in [DHS] after performing such duties . . . for at least 3 years." *See* 5 U.S.C. §§ 8331(31), 8401(36). Congress made those benefits applicable to officers working for DHS on the date the statute was enacted, 121 Stat. at 2077, and it authorized the Office of Personnel Management ("OPM"), in consultation with DHS, to promulgate regulations necessary to carry out the amendments, *id.* at 2078.

OPM recently adopted regulations governing the enhanced retirement benefits scheme. *See* 5 C.F.R. §§ 831.1603, 831.1604; *see also* Customs and Border Protection Officer Retirement, 76 Fed. Reg. 41,993-42,003 (July 18, 2011) (final rule). Prior to the issuance of those regulations, DHS created its own definitions that it used to determine which employees were eligible for the new benefits. As pertinent to this appeal, there are no substantial differences between OPM's regulations and the definitions employed by DHS.

According to DHS's definitions, in order to be eligible for the enhanced retirement benefits a CBP officer must have been employed in either a primary or a secondary covered position. A primary covered position is one in which an employee serves as a CBP officer in a GS-1895 series position (or predecessor positions, such as Customs Inspector, Immigration Inspector, or Canine Enforcement Officer) "whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry." There is no dispute that Mr. Olszak's service as an Immigration Inspector qualifies as employment in a primary covered position.

An employee who is not in a primary covered position may be eligible for the enhanced retirement benefits if he was employed in a primary covered position for at least three years and is then transferred directly to a secondary covered position. DHS defines a "direct" transfer to mean one "without a break in service exceeding 3 days." The agency defines secondary covered positions as either (1) supervisory, i.e., positions in which the incumbents' primary duties are as first-, second-, or third-level supervisors of CBP officers, or (2) administrative, i.e., "executives, program managers, technical, semi-professional, or professional positions for which experience as a [CBP] Officer or equivalent experience in DHS is a mandatory prerequisite." Mr. Olszak's transfer from his position as an Immigration Inspector to the position of Asylum Officer was effected without a break in service. Therefore, the only question on appeal is whether the Asylum Officer position qualifies as a secondary covered position for purposes of determining eligibility for enhanced retirement benefits.

DHS concluded that the Asylum Officer position did not qualify as a secondary covered position and therefore denied Mr. Olszak's request for enhanced retirement benefits. Mr. Olszak appealed that decision to the Merit Systems Protection Board. After a hearing at which several witnesses testified about the nature of various positions within CBP and the procedure for determining which positions qualified for secondary coverage, the administrative judge who was assigned to the case affirmed the agency's determination. The administrative judge concluded that the Asylum Officer position was not a secondary covered position "due to the administrative nature of the position" for which CBP officer experience "was not required." In contrast to the CBP officer positions, which involve law enforcement duties such as

conducting searches, making arrests, and "detecting and preventing terrorists and instruments of terror weapons from entering the United States," the Asylum Officer position is "mostly sedentary in nature and is performed predominantly in an office setting." Although Asylum Officers need "a thorough knowledge and understanding of the complex body of immigration laws," the administrative judge concluded that during the time period at issue in this case Asylum Officers could be hired "off the street" without any previous agency experience.

Mr. Olszak sought review by the full Board, which affirmed the administrative judge's decision. The Board concluded that Mr. Olszak failed to show that the agency erred in determining that the Asylum Officer position did not qualify for secondary coverage. The Board principally relied on two factors: Mr. Olszak's stipulation that during "the relevant period, Asylum Officers could be hired as outside applicants without CBP [officer] or Immigration Inspector experience" and Mr. Olszak's failure to offer evidence that experience as a CBP officer or equivalent experience in DHS was a mandatory prerequisite for the Asylum Officer position.

## DISCUSSION

Mr. Olszak challenges DHS's determination that the Asylum Officer position is not a secondary covered position for purposes of enhanced retirement benefits. It is undisputed that the Asylum Officer position does not satisfy the first of the two grounds for classification as a secondary covered position—that the position is one in which the employee exercises supervisory authority over CBP officers, *see, e.g.*, 5 C.F.R. § 831.1604(b)(2)(i). Instead, he argues that the agency should have ruled that the Asylum Officer position satisfies the second ground

for classification as a secondary covered position, because it is an administrative position. Although the Board held that Asylum Officers did not qualify under that category because they were not required to have prior experience in a primary covered position, Mr. Olszak argues that prior experience in primary positions was not actually required to qualify for secondary coverage in an administrative position. In support of his argument, he contends that other individuals in the agency occupy positions that are classified as secondary covered positions even though they have not had primary position experience or training.

The statutory scheme granting enhanced retirement benefits to CBP officers was meant to parallel the scheme enacted to grant similar benefits to other federal law enforcement officers ("LEOs"). *Cf.* 5 C.F.R. § 831.902 (describing primary and secondary positions for LEOs); *Watson v. Dep't of the Navy*, 262 F.3d 1292, 1299-1300 (Fed. Cir. 2001). Given the purpose of the statute, it is reasonable to conclude that Congress wanted to limit enhanced retirement benefits to CBP employees who perform similar law enforcement tasks.

Primary covered positions in CBP, such as the Immigration Inspector position, entail "front-line" duties such as apprehending, detaining, or arresting persons who are violating federal immigration laws and "search[ing] persons, baggage, cargo, and carriers for contraband," tasks for which CBP officers are issued firearms and authorized to conduct searches and make arrests. *See* Office of Pers. Mgmt., Standards, Customs and Border Protection Series, 1895. Those responsibilities differ in their rigor and their law enforcement orientation from the duties of an Asylum Officer.

Before the administrative judge, the agency presented testimony explaining how the Asylum Officer position was classified and why experience in a primary covered position is not required for the Asylum Officer position. Asylum Officers interview asylum applicants and make initial determinations as to whether an applicant meets the statutory requirements for asylum. To do so, Asylum Officers need to be aware of human rights conditions in various countries to enable them to make credibility determinations about each applicant's circumstances. Such determinations are mostly factual and legal, and they are performed primarily in an office setting.

Given the difference in the tasks performed by Asylum Officers and CBP employees who occupy primary covered positions, the agency's determination that Asylum Officers need not have prior experience or training in a primary covered position is a reasonable one and not at odds with the statutory scheme. The agency's decision that the position of Asylum Officer does not qualify as a secondary coverage position is therefore rational and consistent with the purpose of the 2007 statute.

Mr. Olszak claims that the agency has applied its definition of secondary coverage positions inconsistently, because it has classified certain positions, such as the Program Manager and Supervisor Program Manager positions, as secondary coverage positions even though they do not require prior CBP experience. He also argues that the agency has classified other positions, such as the District Adjudications Officer ("DAO") and Center Adjudications Officer ("CAO") positions, as secondary coverage positions even though they require skills "virtually similar" to those of Asylum Officers. With respect to the Program Manager and Supervisory Program Manager positions, Mr. Olszak has not shown that those positions

are ineligible for secondary coverage under the "supervisory" prong of the definition of secondary coverage. As for the DAO and CAO positions, Mr. Olszak has not shown that those positions are so similar to the Asylum Officer position as to warrant a conclusion that the agency's classification of the Asylum Officer position was erroneous. The Board therefore properly held that Mr. Olszak failed to show either that he qualified for enhanced retirement benefits under DHS's rules applying the 2007 statute, or that the agency misapplied either the statute or its own rules in classifying the Asylum Officer position as ineligible for enhanced retirement credit.

**AFFIRMED**