**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

PATRICIA AVEITIA,
          Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
          Agency.

DOCKET NUMBER
DA-0842-13-0254-I-1

DATE: September 25, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Leticia Dominguez, Esquire, El Paso, Texas, for the appellant.

Peter Arcuri, El Paso, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which affirmed the agency's reconsideration decision to deny her Customs and Border Patrol Officer (CBPO) enhanced retirement coverage. Generally, we grant petitions such as this one only when: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to apply the appropriate regulations, we AFFIRM the initial decision.

¶2 The appellant appealed from the agency's decision to deny her enhanced retirement coverage under the Federal Employees' Retirement System. Initial Appeal File (IAF), Tab 1 at 1. She is currently employed by the agency as an Assistant Director, GS-0340-15, in the Office of Field Operations, U.S. Customs and Border Protection, in El Paso, Texas. *Id.*, Subtab 36. The agency determined that the appellant's service between 1999 and 2004 did not constitute service in a secondary covered position. Instead, the agency determined that it represented a break in service before she later served in positions that are otherwise secondary covered positions. *Id.*, Attachment 1. The agency thus found that she was ineligible for CPBO enhanced retirement coverage. *Id.* The appellant filed a Board appeal after the agency issued its reconsideration decision, and, following a hearing, the administrative judge affirmed the agency's decision. IAF, Tab 19, Initial Decision (ID). The appellant filed a petition for review asserting that the initial decision was incorrectly decided. Petition for Review (PFR) File, Tab 1.

¶3 The federal civil service retirement laws extend special retirement benefits to persons who serve in physically rigorous positions, such as law enforcement

officers and firefighters. Employees who transfer from these positions to supervisory or administrative positions in the same occupations are also eligible for enhanced retirement coverage. Such supervisory and administrative positions are deemed covered secondary positions. *Fritts v. Department of Homeland Security*, 102 M.S.P.R. 265, ¶ 6 (2006) (citing *Morgan v. Office of Personnel Management*, 773 F.2d 282, 283 (Fed. Cir. 1985)); 5 C.F.R. § 842.1002.[2] Eligibility rules for enhanced retirement coverage are strictly construed. *See Kroll v. Department of Homeland Security*, 2014 MSPB 69, ¶ 6 (2014).

¶4      To remain eligible for CBPO enhanced retirement benefits, an employee who is in a secondary covered position must have transferred to that position from a primary covered position with no break in service after at least 3 years in a primary covered position. Primary covered positions are those in the GS-1895 job series or predecessor positions "whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry, including any such employee who is transferred directly to a supervisory or administrative position in the Department of Homeland Security after performing such duties . . . in 1 or more positions." 5 U.S.C. § 8401(36); *see also* 5 C.F.R. § 842.1002. An employee seeking enhanced retirement coverage bears the burden of proving her entitlement thereto by preponderant evidence. *Kroll,* 2014 MSPB 69, ¶ 6 (citing *Olszak v. Department of Homeland Security*, 117 M.S.P.R. 75, ¶ 8 (2011), *aff'd*, 475 F. App'x 757 (Fed. Cir. 2012)).

---

[2] The initial decision erroneously cites subpart 842H of Title 5 of the Code of Federal Regulations as the applicable regulation in this appeal. *See, e.g.*, ID at 5. In July 2011, however, a regulation specific to CBPO enhanced retirement coverage was issued. Customs and Border Protection Officer Retirement, 76 Fed. Reg. 41,993 (July 18, 2011) (codified at 5 C.F.R. subpart 842J). We considered this appeal under the regulation specific to CBPO positions. Although the plain language of the regulation differs considerably from the generally applicable regulation in subpart 842H, the underlying principles do not differ, and we reach the same result. We note that cases decided under subpart 842H are applicable when addressing those basic principles.

¶5        The appellant was a Customs Inspector and Supervisory Customs Inspector, positions in the GS-1890 occupational series, from June 22, 1987, through October 23, 1999.  *See* IAF, Tab 1, Subtabs 1, 4-5.  From October 24, 1999, until September 18, 2004, she served as an Investigative Program Officer (IPO), GS-1801-13, within the Office of Internal Affairs (OIA), and later, within the Office of Professional Responsibility (OPR).  *Id.*, Subtabs 5-6.  She was promoted to the position of Customs Inspector (Program Officer), GS-1890-14, effective September 19, 2004.  *Id.*, Subtab 6.  It is undisputed that she had the requisite primary covered service.  *Id.*, Subtab 1.  It is likewise undisputed that the position to which she was promoted in 2004 is a secondary covered position.  *Id.*  The appellant's burden of proof was to establish that the IPO position in which she served between 1999 and 2004 was a covered secondary position and thus did not constitute a break in service.

¶6        A secondary covered position within the agency is either:

> (1) Supervisory; i.e., a position whose primary duties are as a first-level supervisor of customs and border protection officers in primary positions; or
>
> (2) Administrative; i.e., an executive, managerial, technical, semiprofessional, or professional position *for which experience in a primary customs and border protection officer position is a prerequisite*.

5 C.F.R. § 842.1002 (emphasis added).  The agency's position description for an IPO states:

> The position is located in the Office of the Special Agent-in-Charge (SAC), Office of Internal Affairs (OIA).  As an advisor to the SAC, the incumbent may formulate, plan, develop and review major IA programs and projects; develop and review valuative data, including internal and external evaluations, statistical and management information reports, and other measurement tools; review and research employee integrity lapses; evaluate investigations for improvement indicators and participate in selected projects designed to identify and target areas of concern requiring improvement.

IAF, Tab 9, Subtab C at 2. It is undisputed that, while serving as an IPO, the appellant did not supervise or manage any employees in primary covered positions, and, indeed, no such employees were assigned to her worksite. *See* ID at 8; *see also* IAF, Tab 18, Hearing Compact Disc (HCD). She thus would not have qualified under the "supervisory" prong of the definition. *See Olszak*, 117 M.S.P.R. 75, ¶ 8; 5 C.F.R. § 842.1002. Accordingly, she was required to prove that she qualified under the "administrative" prong; that is, experience as a Customs Inspector or in an equivalent position was a prerequisite for the IPO position. *See Kroll*, 2014 MSPB 69, ¶ 11 (citing *Olszak*, 117 M.S.P.R. 75, ¶¶ 8-9).

¶7    The appellant asserted that she would not have been able to perform her duties as an IPO without prior experience as a Customs Inspector. *See* HCD. For example, she believed her prior experience was valuable when she was charged with investigating whether inspectors failed to follow agency procedures or violated the law. *Id.* One of her witnesses, a retired Investigative Intelligence Officer who worked with her when she was an IPO, testified that she would have been able to work as an IPO without prior experience as a Customs Inspector. *Id.* Nevertheless, he explained, her job would have been "difficult" because the operational experience and technical knowledge she gained as a Customs Inspector helped her perform at a higher level. *Id.*

¶8    The appellant admitted, however, that she did not have the same duties or job functions as a Customs Inspector. *Id.* She indicated that she did not inspect vehicles, persons, or merchandise. *Id.* She did not carry a gun, wear a uniform, or have to maintain firearms proficiency. *Id.* The appellant related that her main duties included review of various files and tapes and sometimes of time and attendance records. *Id.* She handled several types of in-house investigations, most of which were not related to law enforcement, e.g., time and attendance issues regarding employees who were not in law enforcement. *Id.* She also

assembled and tracked compilations of investigative reports (known as "red books") for use in the field. *Id.*

¶9 The OPR SAC in El Paso testified, stating his belief that prior experience as a CBPO had never been required for appointment as an IPO. *Id.* He also stated that the current IPO in that office had not served as a Customs Inspector or in any other CBPO position prior to appointment. *Id.* The Assistant SAC in El Paso, who worked with the appellant while she was an IPO, testified that she held "a support position" in OIA and, to the best of his knowledge, IPOs were support personnel and CBPOs. *Id.* One of the appellant's former colleagues in OIA testified that there are no mandatory experience requirements for the IPO position. *Id.* She explained that two persons have performed IPO functions in El Paso since the appellant's promotion from that position, and neither person had prior experience as a CBPO or Customs Inspector. *Id.*

¶10 The agency also provided testimony from its trainer to the field offices regarding CBPO enhanced retirement coverage. This employee makes recommendations as to which positions would qualify for secondary retirement coverage. *Id.*; *see* IAF, Tab 5 at 105. She testified that, when she reviewed the agency's documentation regarding the IPO position, she did not find any requirement that an appointee have prior CBPO experience. *See* HCD. She further testified that her review of the appellant's reconsideration request included evaluating the qualifications of other IPOs, the official position description, and the appellant's own account of her duties. *Id.*; *see* IAF, Tab 5 at 106-11, Tab 9, Subtab C. She concluded that the IPO position did not meet the definition of a secondary covered position. *See* HCD; *see also* IAF, Tab 5 at 105.

¶11 An agency employee who served on the CBPO Enhanced Retirement Program Management Team testified that she helped review position descriptions and duties for approximately 21,000 cases in order to develop a list of primary and secondary covered positions. She said that the IPO position does not appear on that list. *Id.*; *see* IAF, Tab 12 at 18-22. She further testified that only four of

nine people who have been appointed as IPOs had prior experience as CBPOs. *See* HCD. Four of the appointees had no prior agency experience, and the records for the remaining appointee were not available.[3] *Id.*

¶12 As a result, the administrative judge determined that the preponderant evidence showed that the appellant's prior experience as a Customs Inspector likely contributed to her success as an IPO, but it was not a mandatory prerequisite for appointment to that position. The administrative judge also concluded that the position did not meet the definition of a secondary covered position. *See* 5 C.F.R. § 842.1002; ID at 13.

¶13 On review, the appellant reiterates her assertion that a December 5, 2010 Standard Form 50, which shows that her service computation date for CBPO retirement coverage as July 6, 2008, proves that she qualifies for enhanced retirement coverage. PFR File, Tab 1 at 6; *see* IAF, Tab 1, Subtab 36. The witness from the agency's CBPO Enhanced Retirement Program Management Team, however, testified that the form is incorrect and was created by off-site personnel unfamiliar with the IPO position. *See* HCD.

¶14 The appellant also argues that members of the agency's CBPO Enhanced Retirement Program Management Team were inexperienced in Customs field operations, relied too heavily on official position descriptions in making their assessments and, in her case, used the wrong position description. PFR File, Tab 1 at 5. She argues that her duties became more rigorous after the agency was

---

[3] On review, the appellant argues that the agency failed to show that the five appointees without CBPO experience lacked any sort of law enforcement experience. She asserts that "it is unreasonable to expect that a person would be hired to conduct investigations, apprehensions or detention of individuals suspected or convicted of offenses against the criminal laws of the United States without some sort of law enforcement experience." PFR File, Tab 1 at 6. Here, the appellant seeks to recharacterize the IPO's duties as rigorous law enforcement work. She adduced no evidence to support her claim, whereas the agency's evidence showed that experience in a primary customs or border patrol position was not a prerequisite for the IPO position. *See Kroll*, 2014 MSPB 69, ¶ 11 (the dispositive issue in determining if a position is secondary is whether CBPO experience was a prerequisite for the position).

created and the Customs and Immigration functions were merged, requiring her to draw on her field experience. *Id.* at 6. The agency witness who served on the CBPO Enhanced Retirement Program Management Team, however, testified that the appellant's personal narrative regarding her job duties was a primary source of information for the team. *See* HCD; *see also* IAF, Tab 5 at 106-12. Moreover, the appellant's own witnesses testified that her primary role as an IPO was to provide administrative support to investigators rather than to serve as a field investigator. *See* HCD.

¶15     Finally, the appellant argues that the administrative judge did not use the correct position description, PD#A03556, because the agency could not locate it at the time and instead submitted the position description for Investigative Program Specialist (IPS). PFR File, Tab 1 at 4. She alleges that she only obtained the correct position description after the record closed. *Id.* She seeks to submit the document with her petition for review, and, in a subsequent motion to supplement her petition, she offers the vacancy announcement under which she applied for the IPO job. PFR File, Tab 1 at 8-11, Tab 5 at 1-5.

¶16     The Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). The appellant asserts that she received the position description after "a third party" employed by OPR conducted "extensive research through archived data" after the record closed. PFR File, Tab 1 at 4. She does not explain, however, why she did not serve any discovery requests on the agency or otherwise request a search of OPR's archival records while the appeal was pending below.

¶17     Even if the appellant could show that she diligently sought to obtain the position description, she has not shown that it is of sufficient weight to warrant an outcome different from that of the initial decision. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). The appellant asserted that the

cover page of the position description in the record listed the IPO position, but the subsequent pages describe the IPS position. *See* ID at 7 n.3; *see also* HCD. However, she admitted during her testimony that IPS duties did not differ from IPO duties in El Paso, where she was assigned. *See* HCD. Additionally, we note that the differences between the two documents are changes in nomenclature arising from the creation of the agency. *Compare* PFR File, Tab 1 at 8-11, *with* IAF, Tab 5 at 128-31. The appellant's version of the position description is the newer, post-merger version. Nothing in that document, however, would support a finding that agency law enforcement experience was required for the IPO position, that the IPO duties were law enforcement duties, or that the appellant supervised any law enforcement personnel.

¶18        Likewise, in her motion for leave to supplement the petition for review, the appellant asserts that she recently discovered the vacancy announcement under which she applied for the IPO position, and that announcement shows that the position required law enforcement experience. PFR File, Tab 5. She explains that she found the announcement in a box of materials she left at her sister's house when she moved to another residence in 2007. *Id.* at 3. Recently, she explains, her sister reminded her about the stored items and she retrieved them, discovering the vacancy announcement. *Id.* The Board's regulations, however, do not provide for pleadings other than a petition for review, cross-petition for review, response to a petition or cross-petition, and a reply to the response. *See* 5 C.F.R. § 1201.114(a). Parties may request permission to submit new and material evidence that was not readily available before the record closed after the closing date. *See* 5 C.F.R. § 1201.114(k). The appellant here has not shown that the vacancy announcement was unavailable to her before the record closed. It cannot be considered, but in any event, the provisions she cites would not affect the outcome of this appeal. *See Avansino*, 3 M.S.P.R. at 214.

¶19        Based on all of the evidence, the administrative judge correctly found that the appellant failed to show that the IPO position was a secondary covered

position. Instead, her break in service precludes her from eligibility for CBPO enhanced retirement coverage. Accordingly, we affirm the initial decision as modified.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                _____
                                          William D. Spencer
                                          Clerk of the Board

Washington, D.C.