**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2025 MSPB 4**

Docket No. CH-0842-21-0460-I-2

**Stacey M. Logan,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

March 14, 2025

Jeff Schrameck, Esquire, Canton, Michigan, for the appellant.

Mary Musilek, Esquire, and Sarah Nelson, Bloomington, Minnesota, for the agency.

Reva Ghadge, Esquire, Minneapolis, Minnesota, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
Cathy A. Harris, Member

**OPINION AND ORDER**

¶1     The agency has filed a petition for review of the initial decision, which reversed the agency's final decision and found that the appellant is eligible for enhanced Customs and Border Protection Officer (CBPO) retirement benefits. For the reasons set forth below, we DENY the petition for review and AFFIRM the initial decision as MODIFIED by this Opinion and Order, clarifying that the plain language of the statute and the regulations regarding entitlement to enhanced CBPO retirement benefits does not require an employee to perform the identified duties for a specified percentage of time.

BACKGROUND

¶2    From January 12, 2003, until July 25, 2004, the appellant worked as a GS-1816 U.S. Immigration Inspector for the U.S. Immigration and Naturalization Service, the predecessor agency of U.S. Customs and Border Protection (CBP). *Logan v. Department of Homeland Security*, MSPB Docket No. CH-0842-21-0460-I-1, Initial Appeal File (IAF), Tab 1 at 5, Tab 5 at 7-8. On July 25, 2004, the appellant transferred to CBP as a GS-1895 CBPO, a position she remained in until April 1, 2007. *Id.* At the time, both positions were covered under the standard Federal Employees' Retirement System (FERS) and not entitled to enhanced retirement benefits. IAF, Tab 5 at 7-8. On April 1, 2007, the appellant began working in a GS-1895-11 CBPO-Enforcement (CBPO-E) position, which was eligible for primary law enforcement officer (LEO) special retirement coverage (SRC). *Id.* at 7, 54. In December 2007, while the appellant was working as a CBPO-E eligible for LEO SRC, Congress passed the Consolidated Appropriations Act of 2008 (CAA), Pub. L. No. 110-161, div. E, title V, § 535(b)(1)(C), (b)(2), 121 Stat. 1844, 2075-76 (2007) (codified at 5 U.S.C. § 8401(36)), which made certain customs and border protection officer positions eligible for special retirement benefits (CBPO SRC) that were previously only available to LEOs at the agency in a system similar to but distinct from LEO SRC.

¶3    On May 23, 2010, the appellant accepted a competitive promotion from the CBPO-E position to a GS-1895-12 CBPO-Intelligence (CBPO-I) position with the agency's Office of Field Operations, which she still occupies. IAF, Tab 5 at 7, 39. CBPO-I positions are eligible for CBPO SRC, and when the appellant accepted the position, the agency indicated that she would "be switched to the CBP Officer enhanced coverage." *See id.* at 7, 41, 51. In 2011, the Office of Personnel Management (OPM) amended its regulations to reflect the changes in retirement benefits available to certain CBPOs and to specifically distinguish between "primary" coverage positions and "secondary" coverage positions. *See*

Customs and Border Protection Officer Retirement, 76 Fed. Reg. 41993 (July 18, 2011). In 2016, it appears that the agency determined that the appellant's position is covered under the CAA as a "secondary" covered position. IAF, Tab 5 at 45.

¶4 By letter dated August 27, 2021, the agency's human resources office informed the appellant that it had incorrectly indicated that she was covered under CBPO SRC when she entered her position in May 2010. *Id.* at 29. The agency explained that, although the appellant's current position is approved for SRC, the appellant was not eligible to receive CBPO SRC because she moved directly from a LEO retirement covered position to her current CBPO SRC secondary position, instead of directly from a CBPO SRC primary position to a CBPO SRC secondary position, per OPM's regulations. *Id.* The letter informed the appellant that it would initiate a personnel action to correct the error and that her retirement coverage would be standard FERS, retroactively effective May 23, 2010. *Id.*

¶5 The appellant filed an appeal of this determination, requesting that the Board find that her tenure as a CBPO-E met or exceeded the duties of a CBPO SRC primary position, and that her retirement status be returned to LEO SRC. IAF, Tab 1 at 4. While the case was pending before the administrative judge, the agency submitted a motion to dismiss for lack of Board jurisdiction as it had not yet issued a final agency decision (FAD) on the matter, and the administrative judge subsequently dismissed the case without prejudice to the appellant's right to refile. IAF, Tabs 12, 22. In June 2022, the agency issued a FAD noting that its classification team had reviewed the appellant's position description and confirmed that it is entitled to secondary CBPO retirement coverage, and found that the August 27, 2021 letter correctly stated that the appellant is ineligible for either CBPO or LEO SRC and is only legally entitled to standard FERS retirement. *Logan v. Department of Homeland Security,*

MSPB Docket No. CH-0842-21-0460-I-2, Appeal File (I-2 AF), Tab 1 at 4. The appellant subsequently filed a Board appeal of the FAD. *Id.* at 3.

¶6    In her submissions to the administrative judge, the appellant argued, among other things, that she is entitled to SRC coverage as a primary CBPO because there was no distinction between primary and secondary SRC coverage in 2010 when she accepted the CBPO-I position, and that the doctrine of equitable estoppel precludes the agency from taking away her SRC benefits after 11 years. I-2 AF, Tab 16; *see also* I-2 AF, Tabs 7, 13. The agency, on the other hand, maintained that the appellant is not entitled to CBPO SRC because she transferred from a LEO SRC primary position to a CBPO secondary position, she is not entitled to the LEO SRC because she transferred out of a LEO SRC eligible position into a CBPO SRC eligible position, and she cannot meet her burden to prove equitable estoppel. I-2 AF, Tab 18.

¶7    After the appellant withdrew her hearing request, the administrative judge issued an initial decision based on the written record that reversed the FAD. I-2 AF, Tab 20, Initial Decision (ID) at 1-2, 30. The administrative judge concluded that the appellant met her burden to prove that her current CBPO-I position is entitled to SRC as a primary CBPO covered position based on the plain language of the statute and its implementing regulations. ID at 10-23. The administrative judge found the agency's interpretation of the language regarding primary positions in OPM's regulations—namely, that an individual performs the identified duties at least 50 percent of the time—was more restrictive than the CAA. ID at 12-20. The administrative judge also determined that, to the extent the appellant was arguing that she is entitled to continued SRC coverage from her CBPO-E position through her CBPO-I position, the CAA and OPM have made clear that the duties of a LEO and a CBPO are not equivalent, and that service in those two categories of employment is not interchangeable. ID at 23-25. Thus, the administrative judge ordered the agency to correct the appellant's personnel

file to reflect her entitlement to CBPO SRC, effective May 23, 2010. ID at 30-31.

¶8 The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant, who was pro se below and is now represented by counsel, has filed a response. PFR File, Tab 7. The agency has filed a reply. PFR File, Tab 9.

ANALYSIS

¶9 Federal civil service retirement laws provide enhanced retirement coverage to persons who serve in certain positions, such as LEOs, firefighters, and CBPOs. 5 U.S.C. § 8412(d). Eligibility for enhanced retirement coverage is strictly construed because it is more costly to the Government than traditional retirement plans and often results in the retirement of important people at a time when they otherwise would have continued to work for a number of years. *Kroll v. Department of Homeland Security*, 121 M.S.P.R. 526, ¶ 6 (2014). An employee seeking enhanced retirement benefits bears the burden of proving her entitlement thereto by preponderant evidence. *Fritts v. Department of Homeland Security*, 102 M.S.P.R. 265, ¶ 6 (2006) (discussing LEO retirement coverage); 5 C.F.R. § 1201.56(b)(2)(ii).

¶10 Pursuant to the enhanced retirement statute, a CBPO "who is separated from the service, except by removal for cause on charges of misconduct or delinquency—after completing 25 years of service . . . [or] after becoming 50 years of age and completing 20 years of service" is entitled to an annuity. 5 U.S.C. § 8412(d)(1)(A)-(B). A CBPO who may receive enhanced retirement coverage is defined as:

> [A]n employee in the Department of Homeland Security (A) who holds a position within the GS-1895 job series (determined applying the criteria in effect as of September 1, 2007) or any successor position, and (B) whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry, including any such employee who is transferred

directly to a supervisory or administrative position in the Department of Homeland Security after performing such duties (as described in subparagraph (B)) in 1 or more positions (as described in subparagraph (A)) for at least 3 years.

5 U.S.C. § 8401(36).

¶11    In 2011, OPM promulgated regulations to govern the CBPO enhanced retirement coverage program, which included setting forth distinctions between primary and secondary CBPO positions.  76 Fed. Reg. 41993 (codified at 5 C.F.R. § 842.1001 *et seq.*).    An employee's service in both primary and secondary positions may count towards her eligibility for enhanced CBPO retirement coverage.  5 C.F.R. §§ 842.1002, 842.1003.  Section 842.1002 defines the terms "primary position" and "secondary position" as follows:

> Primary position means a position classified within the [CBPO] (GS-1895) job series (determined by applying the criteria in effect as of September 1, 2007) or any successor position whose duties include the performance of work directly connected with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry.

> Secondary position means a position within the Department of Homeland Security that is either—

> (1) Supervisory; i.e., a position whose primary duties are as a first-level supervisor of customs and border protection officers in primary positions; or

> (2) Administrative; i.e., an executive, managerial, technical, semiprofessional, or professional position for which experience in a primary customs and border protection officer position is a prerequisite.

¶12    On review, the agency contends that the administrative judge misinterpreted OPM's implementing regulations to avoid giving effect to the categorical distinction between primary and secondary positions—or front-line and supervisory/administrative positions—in her analysis that the CBPO-I position is entitled to primary SRC, thus rendering the regulations meaningless.  PFR File, Tab 1 at 13-17.  The agency also maintains that the administrative

judge erroneously failed to give deference to OPM's regulations, *id.* at 8-11, and its interpretation of the CBPO SRC statute, *id.* at 11-13. For the reasons that follow, we agree with the administrative judge.

<u>The administrative judge correctly found that the plain language of 5 U.S.C. § 8401(36) entitles the appellant to CBPO SRC.</u>

¶13 Statutorily, to be entitled to CBPO SRC, an employee must hold a position in the GS-1895 series and the position's duties must "*include activities relating to* the arrival and departure of persons, conveyances, and merchandise at ports of entry," including any employee who transferred directly to a supervisory or administrative position in the agency after performing such duties for 3 years. 5 U.S.C. § 8401(36) (emphasis added). The agency determined that the appellant is ineligible for the CBPO SRC because she never held a CBPO primary position, and she transferred directly from a LEO SRC position to a CBPO SRC position. IAF, Tab 5 at 8, 29.

¶14 It is undisputed that the appellant holds a GS-1895 position. Further, the administrative judge determined that the appellant's position description specifically states that her work "[d]eals with inspection, intelligence analysis, examination, and law enforcement activities relating to arrivals and departures of persons, conveyances, and merchandise at ports of entry," and that it contemplated that she would perform, at least occasionally, inspectional work. ID at 11 (citing IAF, Tab 5 at 47-48). Further, the administrative judge found, and the agency does not dispute, that the appellant actually performs those identified duties in her CBPO-I position. ID at 11-20; *see Felzien v. Office of Personnel Management*, 930 F.2d 898, 903 (Fed. Cir. 1991) (finding that, not only the position description but also the duties actually performed by the appellant, determine SRC eligibility). Thus, the administrative judge correctly concluded that, pursuant to the statute, the appellant is entitled to CBPO SRC. ID at 15.

<u>Neither 5 U.S.C. § 8401(36) nor OPM's regulations require a minimum amount of time performing activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry for entitlement to primary CBPO SRC.</u>

¶15     On petition for review, the agency reasserts that, to be eligible for CBPO SRC primary coverage, an employee must perform the identified duties more than 50 percent of the time. PFR File, Tab 1 at 12; I-2 AF, Tab 12 at 6-8. It explains that, because the statute and regulations are silent as to the amount of time an employee must spend performing duties that "relate to" or are "directly connected" with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry, it looked to the LEO SRC statutory scheme, after which the CBPO statutory scheme is modeled. *Id.* at 12-13. In support of its assertion, the agency argues that *Olszak v. Department of Homeland Security*, 117 M.S.P.R. 75 (2011), *aff'd per curiam*, 475 F. App'x 757 (Fed. Cir. 2012), is applicable here and that primary covered positions are only those positions that entail the "front-line" law enforcement duties, similar to their LEO counterparts. PFR File, Tab 1 at 10-15. It further contends that the administrative judge's interpretation of the statute and regulations contradicts *Olszak*. PFR File, Tab 1 at 10-15.

¶16     If a statute's language provides a clear answer as to its meaning, the statutory interpretation inquiry ends, and the plain meaning of the statute is regarded as conclusive absent a clearly expressed legislative intent to the contrary. *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 16. Here, the statute does not in any way establish a minimum percentage of time that an employee must perform duties, including "activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry." 5 U.S.C. § 8401(36); 5 C.F.R. §§ 842.1002, 842.1003. Additionally, there is no clearly expressed legislative intent that the statute was intended to include such a requirement.

¶17  Contrary to the agency's assertions, the statutory language for LEO SRC and CBPO SRC are distinctly different.  To be entitled to a LEO SRC, it is required that an employee's duties "are *primarily*—the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States," or "the protection of officials of the United States against threats."  5 U.S.C. § 8401(17) (emphasis supplied).  There is no corresponding requirement in 5 U.S.C. § 8401(36) that a CBPO's duties "primarily" be related to the arrival and departure of persons, conveyances, and merchandise at ports of entry.  Congress's decision to omit a requirement from CBPO SRC eligibility that the employee "primarily" perform the listed duties has every appearance of being intentional, in light of its decision to include such a requirement for LEOs in the very same statute.  When Congress included particular language in one section of a statute but omitted it in another section of the same statute, generally, it is presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion.  *Russello v. United States*, 464 U.S. 16, 23 (1983); *Moulton v. Office of Personnel Management*, 2023 MSPB 26, ¶ 17.  This principle applies all the more strongly when comparing provisions found in the same section of a statute.  *See Moncada v. Executive Office of the President*, 2022 MSPB 25, ¶ 17 (finding that, because different terms were used in the same statutory section, Congress intended those terms to have different meanings).

¶18  Furthermore, even though OPM's regulations make a distinction between primary and secondary CBPO *positions*, there is no language in the regulations that requires the appellant to perform the identified CBPO SRC duties "primarily" or for a specified percentage of time to be entitled to primary CBPO SRC.  *Compare* 5 C.F.R. § 842.802 (defining "primary duties" and "secondary position" in the context of SRC for LEOs, firefighters, and air traffic controllers), *with* 5 C.F.R. §§ 842.1002, 842.1003(c)(1) (setting forth the definitions and conditions of coverage for CBPO SRC).  Rather, the regulations

governing CBPO SRC merely require that the appellant perform duties directly connected with activities relating to arrival and departures of persons, conveyances, and merchandise at ports of entry. 5 C.F.R. §§ 842.1002, 842.1003(c)(1).

¶19 We also find that *Olszak* is distinguishable from the instant case. In *Olszak*, the dispositive issue was whether an employee's Asylum Officer position qualified for secondary CBPO SRC eligibility. *Olszak*, 117 M.S.P.R. 75, ¶¶ 5-15. To qualify as a secondary CBPO, the employee's position must either be: "(1) Supervisory; i.e., a position whose primary duties are as a first-level supervisor of [CBPOs] in primary positions; or (2) Administrative; i.e., an executive, managerial, technical, semiprofessional, or professional position for which experience in a primary CBPO position is a prerequisite." 5 C.F.R. § 842.1002.[1] The Board held that the employee's position did not qualify as a covered secondary position because he did not supervise primary CBPOs or hold a position in which experience in a primary CBPO position was a prerequisite. *Olszak*, 117 M.S.P.R. 75, ¶¶ 8-9. Because the instant appeal does not involve secondary CBPO coverage, *Olszak* is inapplicable.

OPM's regulations are not entitled to controlling deference for statutory interpretation.

¶20 The agency also argues on review that the administrative judge failed to give deference to OPM's regulations, which, according to the agency, would render the appellant ineligible for CBPO SRC, as required by *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). PFR File, Tab 1 at 8-11. It further contends that the administrative judge failed to accord its interpretation deference, as required by *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

---

[1] Although the Board decided this case prior to the promulgation of 5 C.F.R. § 842.1002, the U.S. Court of Appeals for the Federal Circuit observed that the agency and the Board had used a definition for a secondary CBPO position that had "no substantial differences" from the regulation. *Olszak*, 475 F. App'x at 760.

¶21    First, as explained above, nothing in OPM's regulations actually precludes the appellant's eligibility for primary CBPO SRC.  Second, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 396-412 (2024), the U.S. Supreme Court overruled the principle of *Chevron* deference, which had directed courts to defer to an agency's reasonable interpretation of an ambiguity in a law that the agency enforces.  *See Chevron*, 467 U.S. at 844-45.  Instead, *Loper Bright* endorses the weaker *Skidmore* deference, which provides that an agency's statutory "interpretations and opinions," "made in pursuance of official duty," and "based upon . . . specialized experience," provides guidance upon which courts may resort, depending upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors" that give it the power to persuade. *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139-40).  Or put another way, *Skidmore* recognizes that an agency's interpretation of a statute it administers may have persuasive, but not controlling, authority.  *Skidmore*, 323 U.S. at 140.  In short, the agency's interpretation in this matter would not be entitled to controlling deference, even if the statutory language were ambiguous on the topic of how much time an employee must spend on the listed duties, which it is not.

¶22    Accordingly, for the reasons set forth above, we affirm  the initial decision's finding that the appellant has proved that she is statutorily entitled to primary CBPO SRC, except as modified to clarify that the plain language of the statute and regulations covering enhanced CBPO retirement benefits does not require an employee to perform the identified duties for a specified percentage of time to be classified as a CBPO primary position.

## ORDER

¶23    We ORDER the agency to grant the appellant the appropriate amount of CBPO retirement credit, effective May 23, 2010.  We also ORDER the agency

to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶24 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶25 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

<u>NOTICE TO THE APPELLANT REGARDING</u>
<u>YOUR RIGHT TO REQUEST</u>
<u>ATTORNEY FEES AND COSTS</u>

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these criteria, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE OF APPEAL RIGHTS[2]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[2] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
131 M Street, N.E.<br>
Suite 5SW12G<br>
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[3] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[3] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board
Washington, D.C.